FILED
United States Court of Appeals
Tenth Circuit

November 2, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RODNEY BYNARD JOHNSON,

    Defendant - Appellant.

No. 10-6066

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:09-CR-00246-HE-1)**

---

Ashley L. Altshuler, Special Assistant United States Attorney (Sanford C. Coats, United States Attorney and Jonathon E. Boatman, Assistant United States Attorney, with him on the Brief), Oklahoma City, Oklahoma, for the Plaintiff - Appellee.

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for the Defendant - Appellant.

---

Before **MURPHY, HOLLOWAY** and **O'BRIEN**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

    Defendant-appellant Johnson was charged with possession of a firearm after former conviction of a felony. After his motion to suppress was denied, the parties

agreed to a non-jury trial on stipulated evidence.  The district judge found the defendant guilty.  At sentencing the judge found that defendant had three qualifying prior felonies under the Armed Career Criminal Act (ACCA) and imposed a fifteen-year sentence, which was the mandatory minimum under the ACCA, and ordered payment of a special assessment of $100.00 and four years of supervised release on release from imprisonment.

Mr. Johnson now appeals the denial of his motion to suppress evidence and the sentence imposed by the district court.  We have jurisdiction under 28 U.S.C. § 1291.

## I.  Background

We view the record in the light most favorable to the prevailing party – here the government.  *See United States v. Salazar*, 609 F.3d 1059, 1061 (10th Cir. 2010).

This case grew out of a routine traffic stop.  The only witness to testify at the suppression hearing was the arresting officer, Trooper Kimmons of the Oklahoma Highway Patrol.  The only other evidence admitted at the hearing was the videotape of the traffic stop.  The trooper's written report was discussed in testimony but not admitted in evidence.

The following summary is from the district court's order denying the motion to suppress.  This summary was relied on in the Principal Brief of the Appellant, which states at page 3 that:  "The facts developed at the evidentiary hearing on the motion to suppress were comprised of the testimony of Oklahoma Highway Patrol Trooper Joe Kimmons and a videotape of the stop from a camera located in Trooper Kimmons' patrol

unit."

Defendant Johnson was driving a car on one of the interstate highways in Oklahoma City at about 3:30 in the morning when the trooper saw him swerve suddenly into another lane. The trooper testified that the driver had committed a violation at that point, an unsafe lane change. The trooper, however, followed the defendant for about one mile before pulling him over. During the time that he was following the car, the trooper saw the three occupants "shuffling frantically inside" the car and called for backup before pulling the car over. Because of the time of night, the movements in the car, and the fact that the car had a bar code on it that suggested it was rented, the trooper suspected the occupants might be involved in something criminal. More specifically, he testified that he suspected because of the unusual movements that the occupants of the car had a gun and that he was accordingly concerned for his safety when he activated his emergency lights and pulled the car over.

Because he was concerned for his safety, the trooper did not approach the car after pulling it over but asked the driver to come back to the patrol car. He had defendant lift his shirt before getting in the patrol car so that he could see that there was no weapon in his waistband. Once the defendant entered the car, the trooper immediately noticed a strong odor of burnt marijuana. In response to routine questions, defendant said that he was from Oklahoma City and had an identification card, but not a driver's license. Defendant said that the passenger in the front, Zach Walker, had rented the car. When asked to identify the other passenger, defendant only knew his "street name." Defendant

-3-

told the trooper that he and his companions had just dropped his cousin off on the northwest side of town and were going to the south side to get a motel room.

The trooper then approached the stopped car to get the rental contract, leaving defendant in the patrol car. As soon as the front seat passenger rolled down his window, the trooper smelled burnt marijuana. He also saw open beer cans. (Apparently none of the three men appeared intoxicated, however.) The passengers both said that they were from Missouri and that the car either belonged to or had been rented by the girlfriend of one of them. (The district judge said that he could not tell from the audio which response had been given.) Neither passenger had a driver's license with them; Walker had no identification at all but did provide his social security number.

The trooper ran a records check on the occupants and asked the defendant about drugs, saying that he asked because he smelled marijuana. Defendant either denied smoking it or said that he had been around it earlier in the night. Based on the odor he had detected and other facts mentioned above, the trooper decided he had grounds to search the car. With the help of other officers who had arrived at his request, the trooper removed all the car's occupants and searched the entire car. A gun was found on the driver's seat, under a blanket. Defendant admitted the gun was his. At some point afterward, the trooper got a report back on the occupants and learned that defendant was a convicted felon.

## II. The District Court's Ruling

In his motion to suppress, the defendant did not challenge the initial stop but only

the search of the car. The district judge first rejected one of the government's two justifications for the search – that it was a valid inventory search. The judge found the evidence insufficient to show that the officers had decided to impound the car before they searched it. The judge said that it was "unclear whether impoundment was the reason for the search or an afterthought to justify it."

The judge concluded, however, that the search was supported by probable cause. His review of the evidence yielded several factors supporting probable cause, of which the smell of marijuana weighed the heaviest. The court said that the defendant's challenge was basically an attack on the trooper's credibility. Defendant had pointed out that the officer's report did not mention that he had smelled marijuana in the car, only on the defendant's person. But the court found the trooper's testimony on that point to be credible. Moreover, the judge rejected the defendant's legal argument that the search of the car would not have been justified if the smell had only been detected on the defendant himself.

The additional factors listed by the court were that the vehicle was from out of state; the lessee or owner of the car was not present; the defendant did not know the actual name of one of his companions (the trooper had testified that criminals sometimes only know each other by nicknames); it was very late at night; the passengers had made unusual movements while the officer had been following the car; and the occupants' plans were vague. The court found that these facts cumulatively amounted to probable cause.

### III. Analysis

### A. Reasonableness of the search.

In reviewing the denial of a motion to suppress evidence, we accept the findings of fact made by the district court unless they are clearly erroneous, but the ultimate question of reasonableness under the Fourth Amendment presents a question of law for our plenary review. *See, e.g., United States v. Manjarrez*, 348 F.3d 881, 884 (10th Cir. 2003).

As the district court observed, the defendant's argument is basically an attack on the credibility of the trooper. The defendant supports the attack primarily by focusing on discrepancies between the officer's testimony and the videotape of the encounter.

In his brief, defendant enumerates discrepancies between the videotape and the trooper's testimony or between the tape and the district court's findings. First, the trooper testified that he smelled marijuana immediately upon defendant's entering the patrol car, but the videotape shows that nine minutes passed before the trooper asked defendant about marijuana. Two, the trooper testified that defendant had said that the backseat passenger did not have a driver's license, but the tape shows that defendant said that he thought the man did have one.

Three, the trooper testified that defendant told him that he had come into town from St. Louis for a birthday party; the tape shows defendant said he was from Oklahoma City and had just dropped his cousin off. Four, the court found that defendant did not know the names of his two passengers; the tape shows defendant identified the front seat passenger as Zach Walker. Five, the district court found that the occupants' plans were

vague, but defendant advised the trooper that they were going to get a motel room on the south side of town.

Without further analysis, defendant concludes that the district court erred in concluding that probable cause supported the search of the automobile. We are not persuaded.

First we note that the odor of marijuana by itself is sufficient to establish probable cause. *United States v. Downs*, 151 F.3d 1301, 1301 (10th Cir. 1998). Because the district court specifically found the trooper to be credible when he testified that there was a strong odor of burnt marijuana emanating from the car when he approached to question the passengers, we can find no error in the conclusion that probable cause was established to justify the search of the car. Moreover, as recited *supra*, in this case the district judge also found other factors that supported probable cause, although the judge apparently did not regard any of them individually as being particularly weighty.

For the most part, defendant's argument rests on inconsistencies in the evidence on some of these lesser factors. We will briefly comment on some of these minor inconsistencies even though the strong odor of marijuana in itself justified the search.

The first alleged inconsistency cited by Mr. Johnson is that the trooper testified that he smelled the odor of burnt marijuana on Johnson as soon as he got into the patrol car but did not address the issue for nine minutes. This is not really an inconsistency but merely an area ripe for attention on cross-examination. The trooper referred several times in his testimony to his perception that the encounter could be a dangerous one for him.

-7-

Even absent that concern, however, we would not impose a rule to govern in fine detail the order in which officers must conduct these encounters. There may have been several good reasons for the officer to delay confronting a detainee with evidence of a crime far more serious than the one that prompted the encounter in the first place. In any event, because there is no actual inconsistency here, we certainly have no basis for rejecting any of the district court's findings.

Several of the other inconsistencies noted by defendant are so minor that the district judge apparently attributed them to the vagaries of human memory. Thus, that the trooper testified that the defendant had told the trooper that none of his companions had driver's licenses when the recording shows that the defendant had said that he thought one of them did have a license is simply not convincing. Similarly, the trooper testified that defendant had said that he had just come down to Oklahoma from St. Louis, when in fact it was only the passengers who had said this. Again, the district court did not draw any adverse inference about the trooper's general credibility from this apparent lapse of memory, and we can certainly not say that it was clearly erroneous for the judge not to have done so. This is, again, not a factor that the judge relied on to support his conclusion of probable cause.

The same can be said for the fact that the defendant knew the actual name of one of his companions, though the trooper had testified that defendant did not know either of the men's proper names. The salient fact was that he knew one of his companions only by a nickname. The trooper testified that in his experience such is often the case with

persons associated for illicit purposes. The district judge carefully assessed the trooper's testimony against the video recording and did not rely on testimony that was contradicted by the recording. Finally, defendant argues that the trooper was mistaken in describing the detainees' plans as vague when Mr. Johnson had told the trooper that they were going to the south side of town to find a motel. This is a matter of characterizing the evidence rather than finding an inconsistency.

We would be hesitant to second-guess the officer's weighing of this fact in the light of his experience, and happily we need not do so. The district court's conclusion that the search was supported by probable cause was correct and soundly based on factors with substantially more weight than this. We note additionally that defendant does not mention the unusual movements of the passengers in the car after they had noticed the officer's car and before being pulled over, in spite of the importance the officer placed on this observation during his testimony and the fact that the district court gave it as a reason supporting his ultimate conclusion.

### B. Reasonableness of the sentence.

In a pretrial notice of intent to seek an enhanced sentence under the ACCA, the government listed four prior convictions as a predicate for application of the Act. There were two prior convictions from Oklahoma for possession with intent to distribute a controlled substance. There is no dispute that these were properly counted. There were also two prior convictions from Missouri, one for possession of a controlled substance

with intent to deliver, and one for second degree assault. Mr. Johnson was seventeen at the time he committed the two Missouri offenses.

Mr. Johnson now challenges whether those should have been counted under the ACCA because defendant was a juvenile at the time. Here this is a legal question of statutory interpretation for *de novo* review.[1]

Mr. Johnson was sentenced under the following provision of the ACCA:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1). The ACCA defines the key terms:

> As used in this subsection –
>
> (A) the term "serious drug offense" means –
>
>      . . . .
>
>      (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

---

[1]Mr. Johnson's challenge thus appears to be to the procedural reasonableness of his sentence. In *United States v. Martinez*, 610 F.3d 1216, 1223 (10th Cir. 2010), we noted that we review criminal sentences for reasonableness, which includes substantive and procedural components, and that proper calculation of the advisory guideline range is necessary for procedural reasonableness. Similarly, a challenge to the applicability of a mandatory minimum sentence under the ACCA addresses the procedural reasonableness of the sentence.

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –

      (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

      (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2).

Under Missouri law, defendant Johnson was classified as an adult for the offenses he committed at age 17 because of the nature of the charges. On the other hand, as Mr. Johnson points out, federal law considers a person under 18 to be a juvenile. 18 U.S.C. § 5031. Federal law would treat the two Missouri offenses as acts of juvenile delinquency, defendant argues, and under the ACCA definition quoted above, they would not qualify as predicate offenses.

Defendant Johnson submits the federal definition of juvenile should be used to determine whether a predicate offense meets the definition of such a conviction under the ACCA. He says that using the federal definition of juvenile will promote uniformity in application of the ACCA and is consistent with the Supreme Court's categorical approach. Appellant's Principal Brief at 12, 18. This argument fails because it is clear that federal law does not determine whether the Missouri convictions, or either of them, qualify as "previous convictions" under the ACCA. The ACCA appears in Chapter 44 of

Title 18.  Section 921 provides the definitions applicable to that chapter.  And that section provides this definition:  "What constitutes a conviction of [a crime punishable by imprisonment for a term more than one year] *shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.*"  18 U.S.C. § 921(a)(20) (emphasis added).  This provision has been described by the Supreme Court as a "choice-of-law clause."  *Beecham v. United States*, 511 U.S. 368, 369 (1994).  Therefore, because Missouri treated the offenses of conviction as felony crimes, *i.e.*, treated Mr. Johnson as an adult, those convictions were properly counted as predicate offenses under the ACCA.

Our holding today is in accord with our holding in the unpublished case of *United States v. Wilson*, 95 Fed. Appx. 970, 974 (10th Cir. 2004), *vacated on other grds.*, 543 U.S. 1103 (2005), and the reasoning of *United States v. Lender*, 985 F.2d 151 (4th Cir. 1993), and *United States v. Cure*, 996 F.2d 1136 (11th Cir. 1993).[2]  We have found no decision by any federal court to the contrary.  Mr. Johnson's arguments are unavailing in light of the clarity of the statutory provisions at issue.

We are publishing this opinion which will be a binding precedent for the courts of this Circuit and for executive branches of the Circuit.

---

[2]We previously addressed the use of state law in determining the treatment for sentencing purposes of offenses committed before the age of eighteen in *United States v. McKissick*, 204 F.3d 1282, 1300-1302 (10th Cir. 2000).  In that case we rejected an equal protection challenge and a vagueness challenge to the use of a similar provision in U.S.S.G. § 4A1.2(d), as applied to enhance the penalty for violation of 21 U.S.C. § 841(b)(1)(A).  In our analysis, we cited *Lender* with approval.

## Conclusion

For the foregoing reasons, the judgment of conviction and the sentence are AFFIRMED.