**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 12, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CAESAR NATHANIAL CRAYTON,
a/k/a Craig James Jones, a/k/a Ceasar
Nathanial James Crayton,

    Defendant - Appellant.

No. 22-2118
(D.C. No. 2:21-CR-00363-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT** [*]
_____

Before **HARTZ**, **EBEL**, and **CARSON**, Circuit Judges.
_____

## I.    INTRODUCTION

At 3:00 a.m. on August 16, 2020, Defendant Caesar Crayton entered the U.S. Border Patrol (USBP) checkpoint on Interstate 10 near Las Cruces, New Mexico. While asking Defendant routine questions, USBP Agent Brenden Hunt smelled marijuana coming from Defendant's vehicle. Hunt conducted a canine inspection, during which the dog alerted, indicating that it smelled drugs in Defendant's vehicle. Hunt and other agents then searched the vehicle and found cocaine, marijuana,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

48 g. of methamphetamine in five bags (weighing .36 g., 5.42 g., 6.84 g., 7.17 g., and 28.18 g.) within a larger bag, firearms, ammunition, almost $7,000 cash on Defendant's person, and 11 cell phones (seven without service, four with).

Defendant was indicted by a grand jury of the United States District Court for the District of New Mexico on three counts: (1) possession with intent to distribute five grams or more of methamphetamine, *see* 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1) and § 924; and (3) carrying a firearm during and in relation to a drug trafficking crime and possessing a firearm in furtherance of such crime, *see* 18 U.S.C. § 924(c)(1)(A)(i). After the district court denied his motion to suppress, Defendant went to trial, during which he unsuccessfully renewed his motion to suppress. Among the federal law-enforcement agents who testified at trial was Drug Enforcement Administration (DEA) Agent Charles Armour, who testified as an expert witness to, among other things, the relevance of various evidence—namely, (1) the quantity and packaging of methamphetamine and (2) the concurrent possession of a firearm, a large sum of cash, and multiple cell phones—to whether the drug was possessed for personal use or for distribution.

Defendant was convicted on all three counts. On appeal Defendant pursues arguments (1) that the search of his vehicle was unconstitutional because he should have been released to leave the checkpoint as soon as he answered the questions regarding his citizenship and travel plans; and (2) that Agent Armour's expert

testimony improperly bolstered the government's case and invaded the province of the jury. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the convictions.

## II.    DISCUSSION

### A.    Motion to Suppress

"We review the district court's denial of defendant's motion to suppress for clear error, considering the evidence in the light most favorable to the district court's ruling." *United States v. Benally*, 146 F.3d 1232, 1240 (10th Cir. 1998) (internal quotation marks omitted). "We are permitted to consider evidence introduced at the suppression hearing, as well as any evidence properly presented at trial." *United States v. Harris*, 313 F.3d 1228, 1233 (10th Cir. 2002).

We begin our analysis of the propriety of the vehicle search by briefly describing the authority of Border Patrol agents at proper fixed checkpoints, such as the one in this case. To begin with, all vehicles can be stopped for inspection regardless of whether there is reasonable suspicion to believe they are involved in criminal activity. *See United States v. Massie*, 65 F.3d 843, 847 (10th Cir. 1995) ("At a fixed checkpoint . . . border patrol agents may stop, briefly detain, and question individuals without any individualized suspicion that the individuals are engaged in criminal activity."). The proper scope of the inspection follows from the purpose of the checkpoint to detect unlawful immigration. "[A]gents may question individuals . . . about their citizenship and immigration status and request documentation." *Id.* at 847–48. And they "may also make a cursory visual inspection of a vehicle." *Id.* at 848.

Defendant's challenge on appeal to the search of his vehicle is quite limited. Several previous arguments were essentially conceded at oral argument in this court. In district court he challenged the veracity of Agent Hunt's testimony that he smelled marijuana emanating from the vehicle, but the district court rejected the challenge. Also, in his opening brief on appeal he contended that the officers needed a warrant to search closed containers within his vehicle even if they had probable cause. But Defendant no longer advanced those contentions at oral argument, and he would have been wasting his time if he had. *See United States v. Kimoana*, 383 F.3d 1215, 1226 (10th Cir. 2004) ("We give special deference to [suppression-hearing] credibility determinations, which can virtually never be clear error." (internal quotation marks omitted)); *California v. Acevedo*, 500 U.S. 565, 580 (1991) (officer with probable cause to search a container within a vehicle need not obtain a warrant before examining the contents). Nor has he questioned that Agent Hunt's smelling marijuana was sufficient for probable cause, as "the odor of marijuana by itself is sufficient to establish probable cause." *United States v. Johnson*, 630 F.3d 970, 974 (10th Cir. 2010).

What remains for our consideration is Defendant's contention that the evidence supporting the search (detection of the odor of marijuana) was obtained during an unlawful detention because he should have been released after the stop's purpose was fulfilled by his answering Hunt's questions about his citizenship and travel plans. But the evidence does not support his argument. Hunt testified that he detected the odor of marijuana when Defendant opened his window after Hunt went

to the vehicle to question Defendant and to look to see if there were any other occupants in the vehicle. In other words, he obtained probable cause to search the vehicle while he was conducting a proper inspection. We therefore reject the challenge to the search of the vehicle.

### B.    Expert Witness Testimony

On appeal Defendant challenges DEA Agent Armour's testimony that the evidence discovered in Defendant's vehicle indicated that he possessed the methamphetamine for distribution rather than for personal use. Defendant argues that this testimony improperly bolstered the government's case and invaded the province of the jury by providing an expert opinion on the ultimate issue—whether he intended to distribute the methamphetamine. We review for abuse of discretion the district court's admission of expert testimony, including the determination of whether the testimony violated Federal Rule of Evidence 704(b) by expressing an opinion on whether the defendant had a mental state constituting an element of the charged offense. *See United States v. Wood*, 207 F.3d 1222, 1235–36 (10th Cir. 2000).

Agent Armour testified at trial that he (1) had been a DEA agent for about eight years, after more than seven years with the Border Patrol; (2) had worked as an undercover agent dozens of times and had participated in more than 100 drug investigations, most of which involved methamphetamine; and (3) through his training and by debriefing hundreds of individuals involved in unlawful drug trafficking and listening to wiretapped conversations, he had learned the relationship between firearms and drug trafficking and the relationship between the quantity and

packaging of methamphetamine and whether it is possessed for personal use or for distribution. Armour had no personal knowledge of Defendant and had not been involved in the investigation of Defendant's case.

Based on his expertise regarding drug trafficking, Armour concluded that the evidence was "not consistent with someone who only possesses that methamphetamine for personal use." R. Vol. VII at 207. He based that conclusion on:

> the amount of methamphetamine, the value of the methamphetamine, the way the methamphetamine was packaged. The fact that there was a fairly large sum of money seized, also. The fact that the defendant had four phones at the time of arrest. That's very consistent with someone who's involved in drug trafficking. And the fact that a firearm was seized in very close proximity to the methamphetamine.

*Id.* at 207–08. We are unpersuaded by Defendant's argument that this testimony was improperly admitted.

"[C]ourts have routinely upheld the admission of expert testimony from law enforcement officers seeking to identify for the jury typical indicia of drug trafficking activity." *United States v. Lovern*, 590 F.3d 1095, 1102 (10th Cir. 2009) (Gorsuch, J.). In particular, we have repeatedly upheld the admission of expert testimony that the quantity of drugs and other circumstances indicate that the possession of the drugs was for the purpose of distribution rather than personal use. *See United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir. 1994); *see also United States v. Draine*, 26 F.4th 1178, 1191 (10th Cir. 2022). Defendant complains that the expert testimony was improper in that it "bolstered" the case against him. Aplt. Br at 23. But, of course, admissible testimony as a general rule will bolster the case of

the party offering the testimony. The only question is whether the testimony is admissible under the rules of evidence. And Defendant has failed to explain how Armour's expert testimony can be distinguished from similar expert testimony upheld by this court.

One argument offered by Defendant is that Armour's testimony violated Federal Rule of Evidence 704(b), which provides: "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." Fed. R. Evid. 704(b). An intent to possess drugs for distribution would constitute such a mental state. But Armour never expressed the opinion that Defendant had such a mental state. His testimony was that in his experience such a mental state was inconsistent with the quantity of drugs, the amount of cash, the presence of firearms and multiple cell phones, etc. As we said in one recent opinion: "[A]n expert on illegal drug activities may testify that the amount and packaging of drugs found in the defendant's possession by the police are consistent with the distribution of drugs for street use rather than withholding the drugs for personal use." *Draine*, 26 F.4th at 1191 (internal quotation marks omitted). "What is proscribed is questioning that produces responses suggesting some special knowledge of the defendant's mental processes." *Id*. (internal quotation marks omitted). There was no such suggestion of special knowledge here. In particular, Armour testified that he played no role in the investigation of Defendant.

Defendant also suggests that the testimony was inadmissible because Armour was simply basing his expertise on anecdotes. This description of the source of the officer's expertise finds some support in the record. In explaining why users generally do not buy large quantities of illicit drugs just for personal use, Armour said, "[A] lot of times when users buy large quantities, they tend to run through it faster than they would if they were buying smaller quantities. It's anecdotal, but similar to how you would see people with like a severe drinking problem." R. Vol. VII at 205. But what is expertise based on experience but a compilation of experiencing individual incidents—that is, the compilation of anecdotes. We reject this complaint about the expert testimony.

We hold that the district court did not abuse its discretion in admitting the expert testimony.

## III. CONCLUSION

We **AFFIRM** Defendant's convictions and the judgment below.

Entered for the Court

Harris L Hartz
Circuit Judge