FILED
United States Court of Appeals
Tenth Circuit

May 28, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EDWARD CRUZ GARZA,

Defendant - Appellant.

No. 08-5040

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. 4:07-CR-00160-CVE-1)**

Keith A. Ward, Keith A. Ward PLLC, Tulsa, Oklahoma, for Defendant - Appellant.

Leena Alam, Assistant United States Attorney, (David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, with her on the brief), Tulsa, Oklahoma, for Plaintiff - Appellee.

Before **HARTZ**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

**HARTZ**, Circuit Judge.

A jury in the United States District Court for the Northern District of

Oklahoma convicted Edward Cruz Garza of possession of a firearm in furtherance

of a drug-trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A)(i). To prove that

offense, the government needed to establish that Mr. Garza (1) committed a drug-trafficking crime, (2) possessed a firearm, and (3) possessed the firearm in furtherance of the drug-trafficking crime. *See United States v. Avery*, 295 F.3d 1158, 1179 (10th Cir. 2002). The only real dispute at the two-hour trial was whether Mr. Garza's possession of a firearm was in furtherance of the admitted drug-trafficking crime.

On appeal Mr. Garza contends that the district court erred in admitting a police officer's expert testimony regarding the use of firearms in the drug trade and Mr. Garza's intent. He also contends that there was insufficient evidence of his guilt.

We have jurisdiction under 28 U.S.C. § 1291 and affirm. We hold that the use of firearms in the drug trade is a proper subject for expert testimony under Federal Rule of Evidence 702. Also, even if we construe the officer's testimony as including an opinion on Mr. Garza's intent, which would violate Federal Rule of Evidence 704(b), we review the issue only for plain error and hold that Mr. Garza is not entitled to relief because he has not established that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotation marks omitted). Finally, we hold that sufficient evidence supports Mr. Garza's conviction.

I.    **BACKGROUND**

The relevant facts are not in dispute. After an informant purchased marijuana from Mr. Garza, officers of the Tulsa Police Department obtained a search warrant for his residence. When they arrived to execute the warrant, the officers knocked on Mr. Garza's door and announced their presence. They spotted movement at the window, waited briefly, and then entered. They saw Mr. Garza run toward a back room and apprehended him. He told the officers that they would find one-half ounce of marijuana on the dresser in his bedroom and a gun underneath the pillow on his bed.

The officers ultimately recovered almost 30 ounces of marijuana from the residence. Slightly over half the marijuana was contained in a gallon bag in the bedroom closet. The remainder was in bags of 28 grams (about one ounce) or less found in different parts of the closet and bedroom. The smallest bag (containing 5.3 grams) was discovered between the mattresses of Mr. Garza's bed. Beneath a pillow on the same bed, where Mr. Garza told them it would be, the officers found a .22-caliber handgun that was loaded and chambered with hollow-point ammunition. The officers also discovered a "red-dot illumination scope" that appeared to fit the handgun and 26 additional .22-caliber hollow-point bullets in the closet of Mr. Garza's bedroom. The officers found a mechanical scale in Mr. Garza's bedroom and a digital scale in his kitchen. The latter had marijuana residue on it.

Mr. Garza was indicted for (1) possessing marijuana with the intent to distribute (Count One), *see* 21 U.S.C. § 841(a)(1), (b)(1)(D); (2) possessing marijuana with the intent to distribute within 1,000 feet of a school (Count Two), *see id.* §§ 841(a)(1), (b)(1)(D), 860; and (3) possessing a firearm in furtherance of a drug-trafficking crime (Count Three), *see* 18 U.S.C. § 924(c)(1)(A)(i). After Mr. Garza pleaded guilty to Count Two, the government dismissed Count One. He proceeded to trial on Count Three.

The government called three witnesses. The first, Officer Dean Lane Montgomery, described the search of Mr. Garza's residence and the items that were seized. The second, Officer Steven Sanders, provided the expert testimony challenged on appeal. The relevant portion of his testimony began as follows:

> Q:   Based on your training and experience, do you have an opinion, with all of the marijuana that was found in the bedroom, the way it was packaged, the Ziploc baggies, the scales, and the firearm, whether or not the gun was possessed in connection with a drug trafficking crime?
>
> A:   Yes, it was.

R. Vol. V at 36. After Sanders started to explain the basis for his opinion by referring to the quantity of marijuana and the way it was packaged, Mr. Garza's counsel raised a Rule 702 objection, arguing that "there is no education, training, and experience that teaches any person how a gun laying [sic] under a pillow has been used or can be used." *Id*. at 37. Referring to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), he argued that "[t]here is no

Daubert-qualified science that teaches anything about an inanimate object such as a gun." R. Vol. V at 37. The objection was overruled and the direct examination continued as follows:

> Q: Officer Sanders, does the type of ammunition also weigh into your opinion about the possession of the firearm?
>
> A: Yes. Let me get that out real quick. The ammunition that was in the magazine and chamber-loaded into the weapon that was found are .22-caliber hollow-point bullets that—the hollow-point is used for maximum expansion when it strikes something with mass. When it hits either—you know, anything that has some type of mass to it, it will expand to cause the most devastation it can for its size.
>
> . . .
>
> Q: And, again, what is the significance of [the red-dot scope] to your opinion that this gun was possessed in furtherance of that drug-trafficking crime?
>
> A: With this type of scope with the red dot, it's for quick, easy target acquisition, if you need to clear a weapon fast and acquire a target to start shooting.
>
> Q: Now, you don't know what was in the defendant's mind, but based on your training and experience, why is a gun like this possessed in furtherance of a drug-trafficking crime?
>
> A: With the gun being found in the bedroom with the 851 grams of marijuana within close proximity of one another, if something was to happen at that time, it was easily accessible.
>
> Q: All right. So it's there for what?
>
> A: It's for protection.
>
> Q: Protection of?

A: Protection of the amount of drugs. Normally we see people that have—either have drugs on them of this quantity or they have a large amount of cash from selling the marijuana, or they'll have both of them on their—at their place or on their person at the same time.

*Id*. at 38–39.

The final government witness was Mark Brown, a federal prisoner. Brown testified that in a recent conversation with Mr. Garza in jail, Mr. Garza had told him about a drug deal gone bad in which he had been robbed of two pounds of marijuana and shot by his assailants.

At the close of the government's evidence, Mr. Garza unsuccessfully moved for a judgment of acquittal. He did not call any witnesses or testify in his own defense. The jury returned a verdict of guilty.

## II. DISCUSSION

### A. Rule 702

In assessing a district court's decision to admit expert testimony, we review de novo "whether the district court employed the proper legal standard and performed its gatekeeper role." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). We review its application of this standard for abuse of discretion. *See id.*

Mr. Garza's challenge to Officer Sanders's testimony is not based on anything specific to Sanders. He does not, for example, challenge Sanders's experience or training. Instead, his focus is on the nature of the testimony. As

we understand him, he is saying that no one should be able to testify to opinions such as Sanders offered.

Federal Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Mr. Garza's concern is the second requirement—reliability.[1] Officer Sanders's testimony was not reliable, he contends, because no conceivable "'science'" could illuminate "how an inanimate object such as a gun was or may be used." Aplt. Br. at 8. Quoting Rule 702, he states that Sanders's "testimony had to be the product of 'reliable principles and methods' that were 'applied . . . reliably.'" *Id*. at 9. And he contends that "[u]nder *Daubert*, the methodology that must be employed is (1) whether the proffered theory can and has been tested; (2) whether the expert's opinion has been subject to peer review; (3) the known or potential

---

[1] Mr. Garza's opening brief on appeal also argues that Sanders's testimony was inadmissible because it would not "assist the trier of fact." Fed. R. Evid. 702. He suggests that "[a]ll persons of common knowledge and experience know how guns can be used." Aplt. Br. at 9. This argument was not made below. In any event, the district court did not abuse its discretion in implicitly deciding that Sanders could assist the jury by describing the particulars of the weapon and ammunition found in Mr. Garza's residence and how they were tools of the drug trade. *See United States v. Sturmoski,* 971 F.2d 452, 459 & n.1 (10th Cir. 1992) (not every citizen understands how firearms are used in the drug trade and thus testimony on the subject assists the trier of fact).

rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *Id*. at 11; *see Daubert*, 509 U.S. at 593–94 (reciting these considerations).

We reject Mr. Garza's Rule 702 argument. Officer Sanders's expert opinion was not improper simply because it was not scientific. Rule 702 authorizes opinion testimony by experts with "scientific, technical, or other specialized knowledge." That specialized knowledge can be acquired through "experience" and "training." Fed. R. Evid. 702. Moreover, although the trial judge must perform a gatekeeping role with respect to all expert testimony, not just such testimony by "scientific" experts, *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances. As the Supreme Court has explained, "[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. at 150 (internal quotation marks omitted). (Although *Kumho Tire* predates the approval of the amendment to Rule 702 that added the three numbered conditions for admissibility, the amendment was intended to be fully consistent with *Kumho Tire*. *See* Fed. R. Evid. 702 advisory committee's note (2000).) Hence, it is not essential that Sanders's opinion be supported by the four factors taken by Mr. Garza from *Daubert*. *See Kumho*, 526 U.S. at 151 (noting that even for scientific testimony, the *Daubert* factors are

"helpful, not definitive").  Accordingly, we do not believe that *Daubert* and its progeny (including the 2000 amendment to Rule 702) provide any ground for us to depart from our pre-*Daubert* precedents recognizing that police officers can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters as the use of firearms in the drug trade.  *See Sturmoski,* 971 F.2d at 459 (opinion testimony by police officer regarding use of firearms to protect valuable methamphetamine laboratory); *United States v. McDonald*, 933 F.2d 1519, 1521 (10th Cir. 1991) (opinion that "street dealers frequently arm themselves to protect the merchandise and the money").

Mr. Garza essentially concedes these points in his reply brief, acknowledging that we have repeatedly permitted police officers to testify as "expert[s] concerning issues involved in the drug trade."  Aplt. Reply Br. at 1.  Instead, he relies on Rule 704(b) (which we address below) and an argument barely touched on in his opening brief—namely, that the government had not furnished "timely notice of its intention to use an expert witness."  *Id*. at 2.  We reject this timely-notice argument.  "It is settled law in this circuit that, in the absence of a statutory or constitutional requirement, there is no requirement that the government disclose its witnesses in any manner, except in a case where trial is for treason or other capital offense."  *United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) (ellipsis, brackets, and internal quotation marks omitted).  Mr. Garza suggests that disclosure was required by Federal Rule of Criminal

Procedure 16. Rule 16, however, states that the government must disclose the experts that it intends to call at trial *if the defendant requests their disclosure*. *See* Fed. R. Crim. Proc. 16(a)(1)(G). Mr. Garza has not directed our attention to such a request, nor have we found one in the record on appeal. Thus, we have no reason to think that his right to pretrial notice of Officer Sanders's testimony was triggered. *See United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000) (no duty to disclose expert witnesses under Rule 16 absent defense request).

### B.    Rule 704(b)

Mr. Garza's remaining attack on Officer Sanders's testimony is that it violated Rule 704(b) because he expressed an opinion on whether "the defendant [had a] mental state . . . constituting an element of the crime charged." Fed. R. Evid. 704(b). Ordinarily, our review of this issue would be for abuse of discretion. *See United States v. Wood*, 207 F.3d 1222, 1235 (10th Cir. 2000). But because Mr. Garza raised no Rule 704(b) objection below, our review is for plain error. *See United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009) (to preserve claim of error, party must object with specificity, articulating "the precise ground" for the objection (internal quotation marks omitted)). Consequently, to obtain relief, Mr. Garza must show "(1) [an] error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, [this] court may then exercise its discretion to notice [the] forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial

proceedings." *Johnson*, 520 U.S. at 467 (brackets, citation, and internal quotation marks omitted).

Federal Rule of Evidence 704(b) provides:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

As we have noted above, the only disputed element of the offense charged against Mr. Garza is that his possession of the firearm was "in furtherance of" a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A). This element relates to the defendant's intent. "[A] firearm that is kept available for use if needed during a drug transaction is 'possessed in furtherance of' drug trafficking . . . so long as such possession is intended by the drug trafficker." *United States v. Robinson*, 435 F.3d 1244, 1251 (10th Cir. 2006) (internal quotation marks omitted). It follows that a district court would commit error if it permitted an expert to testify that the defendant in a § 924(c)(1)(A) case possessed a firearm "in furtherance of" drug trafficking.

The first question to be answered is whether Officer Sanders indeed did testify that Mr. Garza possessed the firearm in furtherance of his drug offense. We repeat the challenged testimony:

Q:      Based on your training and experience, do you have an opinion, with all of the marijuana that was found in the

bedroom, the way it was packaged, the Ziploc baggies, the scales, and the firearm, whether or not the gun was *possessed in connection with* a drug trafficking crime?

A:     Yes, it was.

. . .

Q:     And, again, what is the significance of [the red-dot scope] to your opinion that this gun was *possessed in furtherance of* that drug-trafficking crime?

A:     With this type of scope with the red dot, it's for quick, easy target acquisition, if you need to clear a weapon fast and acquire a target to start shooting.

Q:     Now, you don't know what was in the defendant's mind, but based on your training and experience, why is a gun like this *possessed in furtherance of* a drug-trafficking crime?

A:     With the gun being found in the bedroom with the 851 grams of marijuana within close proximity of one another, if something was to happen at that time, it was easily accessible.

Q:     All right.  So it's there for what?

A:     It's for protection.

Q:     Protection of?

A:     Protection of the amount of drugs.  Normally we see people that have—either have drugs on them of this quantity or they have a large amount of cash from selling the marijuana, or they'll have both of them on their—at their place or on their person at the same time.

R. Vol. V at 36–39 (emphasis added).

One could make a reasonable argument that Officer Sanders never expressed an opinion on Mr. Garza's intent.  The words "in connection with," *id.*

-12-

at 36, and "in furtherance of," *id*. at 39, came from the prosecutor's lips, not Sanders's; "in connection with" would appear to denote an objective test, not a reference to Mr. Garza's mental state; Sanders's responses do not mention Mr. Garza's mental state; and, perhaps most importantly, the prosecutor clarified the object of her inquiry when she prefaced her third question by saying, "Now, you don't know what was in the defendant's mind," *id*. at 39.

Nevertheless, we need not resolve whether the challenged testimony was error or whether that error was plain, because Mr. Garza cannot satisfy the fourth element of plain-error review: namely, that the alleged error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (brackets and internal quotation marks omitted); *see United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009) (a defendant is not entitled to plain-error relief if he "fails with regard to any one of the four" elements). To establish this element, Mr. Garza needed to demonstrate that the nonconstitutional 704(b) error was "particularly egregious" and that allowing it to stand would result in a "miscarriage of justice." *United States v. Dazey*, 403 F.3d 1147, 1178 (10th Cir. 2005) (internal quotation marks omitted). For the reasons that follow, we do not believe that he has met this demanding standard.

Most importantly, Officer Sanders's testimony was quite similar to what would have been clearly admissible testimony. Rule 704(b) would present no bar to his testifying that (1) it is not uncommon for drug dealers to carry a firearm for

protection and (2) Mr. Garza's firearm was readily accessible, very near the drugs, and equipped in a manner suited for protection (that is, with loaded and chambered hollow-point bullets and a red-dot scope nearby). *See Sturmoski*, 971 F.2d at 459 ("'tools of the narcotics trade'" testimony permissible under Rule 704(b)). There is only a subtle difference between such testimony, which supports an inference that Mr. Garza possessed a firearm in furtherance of drug trafficking, and the testimony that Sanders actually provided. (The subtlety of the difference may account for defense counsel's failure to discern a Rule 704(b) violation and raise a timely objection.) Second, it is significant that the prosecutor did not think that she was soliciting an opinion on Mr. Garza's intent, as indicated by her prefacing her question to Sanders with the remark that "[n]ow, you don't know what was in the defendant's mind." R. Vol. V at 39; *see United States v. Daniels*, 252 F.3d 411, 414 (5th Cir. 2001) (absence of prosecutorial bad faith is factor in denying relief under fourth prong of plain-error review). Finally, as we explain in the following section, there was solid admissible evidence of Mr. Garza's intent. *See United States v. Richards*, 241 F.3d 335, 342 (3d Cir. 2001) (under the fourth prong of plain-error review, other evidence of guilt can lessen seriousness of error in improperly admitting testimony). For all these reasons, the forfeited 704(b) error was not "'particularly egregious,'" *Dazey*, 403 F.3d at 1178, and we need not recognize it on appeal to safeguard the "fairness,

integrity, or public reputation of judicial proceedings," *Johnson*, 520 U.S. at 467 (internal quotation marks omitted).

## C. Sufficiency of the Evidence

Mr. Garza's final contention is that the government failed to adduce sufficient evidence that he possessed his .22 caliber handgun with the intent to further his drug-trafficking operation. On this claim we review the evidence de novo to assess whether a reasonable jury, viewing the evidence in the light most favorable to the government, could have found Mr. Garza guilty beyond a reasonable doubt. *See United States v. Baum*, 555 F.3d 1129, 1131 (10th Cir. 2009).

A drug dealer's "'mere possession'" of a firearm does not establish the "'in furtherance'" element of a § 924(c)(1)(A) offense. *Robinson*, 435 F.3d at 1251. Rather, it must be shown that "the weapon furthered, promoted or advanced a drug trafficking crime." *United States v. Poe*, 556 F.3d 1113, 1127 (10th Cir. 2009) (internal quotation marks omitted). "This standard is satisfied if the firearm was kept available for use should it be needed during a drug transaction, and the defendant intended the firearm to be accessible for that purpose." *Id*. To assess whether the defendant had the requisite intent, we consider a number of factors, including: "(1) the type of drug activity conducted, (2) the accessibility of the firearm, (3) the type of firearm, (4) the legal status of the firearm, (5) whether the firearm was loaded, (6) the proximity of the firearm to drugs or drug

profits, and (7) the time and circumstances under which the firearm was found."

*Id.*

Factors 1, 2, 3, 5, and 6 certainly favor a finding that Mr. Garza intended to use the gun to protect his drug operation. The evidence of intent is comparable to that in a recent case in which we held that the evidence of the "'in furtherance'" element was "overwhelming." *Robinson*, 435 F.3d at 1251 (noting proximity of loaded, accessible, high-powered rifle to drug paraphernalia). Moreover, Mr. Garza's fellow prisoner, Mark Brown, testified to Mr. Garza's account of having been shot and robbed in a previous drug transaction. Such an experience could readily motivate Mr. Garza to decide to prevent a repetition of that experience, and might well account for his selection of particularly lethal ammunition. The evidence of Mr. Garza's guilt was ample.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.