ACCEPTED
14-14-00403-cr
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
1/14/2015 12:38:46 PM
CHRISTOPHER PRINE
CLERK

## No. 14-14-00403-CR

In the
Court of Appeals
For the
Fourteenth District of Texas
At Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

1/14/2015 12:38:46 PM

CHRISTOPHER A. PRINE
Clerk

——————◆——————

### No. 1342020
In the 177th District Court
Of Harris County, Texas

——————◆——————

### CEDRIC HOPES
*Appellant*
v.
### THE STATE OF TEXAS
*Appellee*

——————◆——————

## State's Appellate Brief

——————◆——————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**NATHAN HENNIGAN**
Assistant District Attorney
Harris County, Texas

**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
State Bar No. 24071454
morgan_clinton@dao.hctx.net

1201 Franklin, Suite 600
Houston, Texas  77002
Tel:  (713) 755-5826
FAX:  (713) 755-5809

*Counsel for the Appellee*

Oral Argument Not Requested

**Statement Regarding Oral Argument**

The appellant requested oral argument, though he gave no particular reason why. The State believes the briefs in this case adequately apprise this Court of the issues and the law, and any marginal benefit from oral argument does not justify the considerable amount of time that preparation for oral argument requires of the parties and the Court. Therefore, the State does not request oral argument.

## Identification of the Parties

Counsel for the State:

> Devon Anderson
> — District Attorney of Harris County

> Nathan Hennigan
> — Assistant District Attorney at trial

> Clinton A. Morgan
> — Assistant District Attorney on appeal

Appellant:

> Cedric Hopes

Counsel for the Appellant:

> C. Patrick Ngwolo & Robert Alton Jones
> — Counsel at trial

> Alexander Bunin & Daucie Schindler
> — Counsel on appeal

Trial Judge:

> Ryan Patrick
> — Presiding judge

# Table of Contents

**Page**

Statement Regarding Oral Argument ............................................................. i

Identification of the Parties ......................................................................... ii

Table of Contents ........................................................................................ iii

Index of Authorities ..................................................................................... v

Statement of the Case ................................................................................. 1

Statement of Facts ....................................................................................... 1

Summary of the Argument ........................................................................... 2

**Reply to Point One**

Neither the appellant's trial objection nor his appellate complaint are responsive to Sgt. Ponder's testimony. The appellant complains about testimony regarding his "gang affiliation," but Ponder only testified as to the meaning of the appellant's tattoos and said nothing of his gang affiliation. ... 3

   I.   Trial Proceedings ......................................................................... 3

     A.   The *Daubert* hearing and Ponder's qualifications ................... 3

     B.   The appellant's objections ......................................................... 5

     C.   Ponder's testimony ................................................................... 6

   II.   The appellant's appellate complaint and why it fails ................. 7

     A.   The appellant's objection and argument do not complain about Ponder's actual testimony. ....................................................... 8

     B.   The trial court did not abuse its discretion in finding Ponder qualified to testify to the content of the appellant's tattoos. ....... 9

**Reply to Point Two**

The appellant's second point presents nothing for this Court's review because it provides no argument as to why a relevancy complaint should be addressed as a constitutional violation. ................................................... 14

**Reply to Point Three**

There is no sufficiency review for extraneous offenses presented during the punishment phase. Moreover, the State's evidence proved an extraneous bad act beyond a reasonable doubt........................................................................15

Conclusion ................................................................................................ 20

Certificate of Compliance and Service...................................................... 21

# Index of Authorities

**Cases**

*Aguilar v. State*
   29 S.W.3d 268 (Tex. App.—
   Houston [14th Dist.] 2000, no pet.) ........................................................... 5

*Bryant v. State*
   340 S.W.3d 1 (Tex. App.—
   Houston [1st Dist.] 2010, pet. ref'd) ......................................................... 12

*Coble v. State*
   330 S.W3d 253 (Tex. Crim. App. 2010) .................................................... 10

*Garcia v. State*
   239 S.W.3d 862 (Tex. App.—
   Houston [1st Dist.] 2007, pet. ref'd) ........................................................... 5

*Malpica v. State*
   108 S.W.3d 374 (Tex. App.—
   Tyler 2003, pet. ref'd) ................................................................................. 17

*Rodgers v. State*
   205 S.W.3d 525 (Tex. Crim. App. 2006) ........................................... 9, 10, 11

*Smith v. State*
   227 S.W.3d 753 (Tex. Crim. App. 2007) .................................................... 17

*Thompson v. State*
   4 S.W.3d 884 (Tex. App.—
   Houston [1st Dist.] 1999, pet. ref'd) ......................................................... 18

*United States v. Garza*
   566 F.3d 1194 (10th Cir. 2009) .................................................................. 10

**Statutes**

TEX. CODE CRIM. PROC. art. 37.07 ..................................................................... 17

**Rules**

TEX. R. EVID. 702.................................................................................................................. 10

To the Honorable Court of Appeals:

## Statement of the Case

The appellant was indicted for aggravated robbery with a deadly weapon. (CR 11). The indictment contained an enhancement paragraph alleging a prior felony conviction. (CR 11). The appellant pleaded not guilty. (7 RR 11). A jury found him guilty as charged. (CR 331, 332). The trial court sentenced the appellant to thirty-five years' confinement. (CR 332). The trial court certified the appellant's right of appeal, and the appellant filed a timely notice of appeal. (CR 335, 336).

## Statement of Facts

The appellant does not raise any issues related to his guilt, thus a detailed recitation of the facts is not necessary.

Wearing ski masks and wielding pistols, the appellant and Reginald Hollins committed robbery at a southeast Houston AutoZone. (7 RR 36, 43; 8 RR 109, 121). Hollins held the store manager at gunpoint and forced him to empty the safe. (8 RR 113-16). Hollins and the appellant then left the store with approximately $2800 and got into a black Impala driven by Derrick Hopes. (7 RR 36, 43; 8 RR 93). Police stopped the black Impala a few minutes later about a block away; inside the car were all three robbers, the bag of

1

money, the implements used in the robbery, and Derrick Hopes's four-year-old child.[1] (7 RR 36-38, 41; 8 RR 73-73, 84).

## Summary of the Argument

The appellant raises three points of error relating to the punishment phase of the trial. In his first point the appellant claims that the trial court erred in admitting testimony that he was affiliated with a gang. However, the trial court did not admit such testimony. The complained-of testimony on described the appellant's tattoos, it did not state that he was a gang member, and the appellant has presented no argument regarding that testimony.

In his second point, the appellant claims that his constitutional rights were violated by the State's failure to admit evidence about gangs. However, neither at trial nor on appeal has the appellant presented argument or authority for how that omission is a constitutional violation, thus his argument should be rejected as inadequately briefed.

In his third point, the appellant claims that the trial court erred in considering evidence of a second robbery that was admitted in the punishment phase because the evidence does not prove, beyond a reasonable doubt, that he committed that offense. However, there is no sufficiency review

---

[1] Trial prosecutor: "Who the hell brings a 4-year-old along on an aggravated robbery spree? Who does that?" (10 RR 28).

2

for extraneous offenses admitted in the punishment phase. Moreover, whether or not the State's evidence proved the appellant's involvement in a second robbery, it certainly proved his involvement with an organized armed-robbery ring, which is an extraneous bad act regardless of the appellant's involvement in the second robbery.

**Reply to Point One**

**Neither the appellant's trial objection nor his appellate complaint are responsive to Sgt. Ponder's testimony. The appellant complains about testimony regarding his "gang affiliation," but Ponder only testified as to the meaning of the appellant's tattoos and said nothing of his gang affiliation.**

## I. Trial Proceedings

### A. The *Daubert* hearing and Ponder's qualifications

Punishment in this case was decided by the trial court. The State's first punishment-phase witness was Sgt. Clint Ponder of the Houston Police Department. The purpose of his testimony was to explain the meaning of the appellant's gang-related tattoos. (9 RR 69-70). Prior to his testimony, the prosecutor explained that the defense wished to have a *Daubert* hearing regarding Ponder. (9 RR 54). The parties then proceeded to ask Ponder about his qualifications, though the court reporter labeled on a portion of this as a *Daubert* hearing. (*See* 9 RR 54-71).

3

Ponder said he had been a police officer for 17 years and had spent most of that time in the gang unit. (9 RR 54-55). He said that he had extensive training related to street gangs, including "attend[ing] numerous conferences and gang classes," and that he had also taught "many" classes on the subject. (9 RR 55, 61). Ponder said that he had testified "ten to 15" times in Harris County courts regarding gang membership, and the trial judge stated that he had found Ponder to be an expert regarding gangs in previous cases. (9 RR 60, 64).

Defense counsel asked Ponder whether he had read any "learned treaties [*sic*]." (9 RR 64). Ponder said that he did not understand what that was. (9 RR 64-65). Ponder said that, aside from the various trainings and conferences he had attended, he learned most of his information from talking to people "on the street." (9 RR 67). Ponder described himself as an expert regarding gang membership and gang identification, and he said that he, personally, had been responsible entering "almost 700" individuals into Harris County's gang database.[2] (9 RR 59-61).

Under questioning from defense counsel, Ponder explained that the presence of gang-related tattoos on an individual was "a really strong indicator" as to gang membership, but some additional indicia of gang

---

[2] Ponder said that the database had approximately 20,000 entries, meaning he was responsible for roughly 3.5% of the entries. (9 RR 59-60).

membership was required to enter someone into the database as a registered gang member. (9 RR 68-69). Ponder said that the testimony he normally provides regards the meaning of defendants' tattoos and, based purely on the tattoos, he does not opine as to whether the individual is a gang member. (9 RR 69-70) ("I'm in here to tell you what tattoos mean and what they represent.").

## B. The appellant's objections

At the end of the hearing, defense counsel stated that he objected "to the relevance of this witness, and as to whether or not under *Daubert*, that he can make a conclusion as an expert concerning Mr. Hopes and any street gang, based upon anything he may have observed." (9 RR 70). The State responded by citing to two cases (*Aguilar v. State*, 29 S.W.3d 268 (Tex. App.—Houston [14th Dist.] 2000, no pet.) and *Garcia v. State*, 239 S.W.3d 862 (Tex. App.— Houston [1st Dist.] 2007, pet. ref'd)) that stand for the general principle that testimony regarding a defendant's gang affiliation and gang tattoos is admissible. (9 RR 70). Defense counsel replied by making an objection that cited to four sections of the Texas constitution and two amendments to the federal constitution, though he provided no argument as to the relevance of

those constitutional provisions. (9 RR 70-71). The trial court overruled these objections. (9 RR 71).

### C. Ponder's testimony

Ponder testified that he observed and photographed the appellant's tattoos. (9 RR 72). These photographs were admitted, over defense objection, as State's Exhibits 105-18. (9 RR 72, 74-75). Ponder then proceeded to explain the meaning of several of the appellant's tattoos, including several that corresponded with membership in the Crips. (9 RR 75-82) (*e.g.* "Up top, O.G., that stands for original gangster. Right here it says 'crip for life.' Right here it says BK. BK is a common term used by Crips. BK means essentially 'Blood Killer', disrespecting Bloods."). Ponder explained that the Crips and Bloods were enemies, and that several of the appellant's tattoos reflected animosity toward Bloods. (9 RR 76, 79, 82) (*e.g.* "And then you also have a character here of a man who's holding up a dog's head, Dawg's D.A.W.G. Bloods are referred to as Dawgs. And what he's doing here is disrespecting Bloods by holding a dog's head up in the air.").

On cross-examination, Ponder said that he was unaware of when the appellant got these tattoos. (9 RR 83). Defense counsel asked Ponder whether "a person who has spent a number of years incarcerated in a juvenile facility

6

when they were very young" might "have a tattoo placed on them" in order to "keep from being assaulted" by prison gangs, and Ponder said this was possible. (9 RR 68).

## II.   The appellant's appellate complaint and why it fails

On appeal, the appellant presents a lengthy argument questioning, *inter alia*, whether "gang affiliation recognition" is a legitimate field of study, whether Ponder was qualified to testify about it, and — assuming the answers to those questions was affirmative — whether Ponder "properly … utilized the principles involved in the field of gang affiliation recognition." (Appellant's Brief at 10-18). The appellant would have this Court believe that determining gang affiliation is an arcane science  that can only be practiced by those with post-graduate degrees and journal publications when, in fact, gang members typically display their affiliation in such a manner as to be readily discernible by the types of people who join street gangs. The State believes that the meaning of tattoos like "Crippin' Ain't Easy" and "Original Gangster" is within the expertise of a 17-year police veteran who works in the gang division, and that it is absurd to apply concepts like "methods and procedures of science" here.

## A. The appellant's objection and argument do not complain about Ponder's actual testimony.

The appellant's complaint at trial was that Ponder was not qualified to "make a conclusion as an expert concerning [the appellant] and any street gang, based upon anything he may have observed." (9 RR 70). The import of this objection, when viewed in light of the questions defense counsel asked Ponder, was that Ponder could not opine as to whether the appellant was actually a gang member. This is how the appellant views his objection on appeal, as his argument complains about Ponder's "testimony regarding [the appellant's gang affiliation." (*See, e.g.*, Appellant's Brief at 13 ("There was no testimony establishing statistical standards and techniques used in his designation of an individual as a gang member.")).

However, Ponder did not testify that the appellant was a gang member. All he did was to give some general background regarding the Crips and Bloods, and to describe the meaning of the appellant's tattoos. (*See* 9 RR 70 ("I'll say what the tattoos mean and ... it's open to the interpretation of the Court.")).

An analogous hypothetical might be a defendant with several tattoos in a foreign language, say, French. Anyone who had an extensive, long-term involvement with the French language and culture might be able to interpret

8

the language in the tattoos and explain any idioms contained in the tattoos. But that same witness, without any knowledge of the defendant, would probably be unable to testify that the defendant was a Frenchman. Those are plainly two different types of testimony.

In this case, all Ponder testified to was the content of the appellant's tattoos. Neither at trial nor on appeal has the appellant actually objected to this testimony. This Court should reject the appellant's first point because it presents nothing for review.

### B. The trial court did not abuse its discretion in finding Ponder qualified to testify to the content of the appellant's tattoos.

Even if this Court believes the appellant's trial objection and appellate complaint adequately raise the issue of Ponder's qualification, the appellant's first point still fails because Ponder was adequately qualified to testify about the appellant's tattoos. A trial court's determination of an expert witness's qualifications is reviewed only for an abuse of discretion. *Rodgers v. State*, 205 S.W.3d 525, 527-28 (Tex. Crim. App. 2006).

The appellant cites to cases regarding the admissibility of scientific evidence, and to how to analyze evidence from the soft sciences. (*See* Appellant's Brief at 11-14 (citing, *inter alia*, *Coble v. State*, 330 S.W3d 253 (Tex.

Crim. App. 2010)). However, interpreting the meaning of tattoos is not a science at all.

Rule of Evidence 702 governs the admissibility of testimony regarding "scientific, technical, or other specialized knowledge." TEX. R. EVID. 702. Before providing such expert testimony, the proponent of the evidence must demonstrate that the witness is qualified "by knowledge, skill, experience, training, or education" to provide the testimony. *Ibid*.

Courts have widely recognized that law enforcement officers, through their experience, often acquire specialized knowledge that qualifies them to testify as experts on aspects of the criminal world that, while not rising to the level of a science, are outside the realm of common knowledge. *See, e.g., United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (rejecting "wooden" application of factors mentioned in *Daubert* to every expert witness and holding that police officer was qualified, under Rule 702, to testify regarding "the use of firearms in the drug trade"). In *Rodgers*, the Court of Criminal Appeals provided several factors for appellate courts to look at when determining whether a trial court abused its discretion in admitting expert testimony on non-scientific matters: the complexity of the subject, how conclusive the expert's opinion is, and how central the testimony is to the resolution of the case. *Rodgers*, 205 S.W.3d at 528. Essentially, the more

complex the subject, the more conclusive the opinion, and the more central the testimony to the resolution of the case, the more stringent courts should be regarding expert qualifications. *Ibid*.

In Rodgers, the State called a fingerprint examiner, Jumper, to testify regarding tire tracks and shoe prints. *Id*. at 526. Jumper testified he "had never graduated from college, had never written articles on tire prints, had only a few days of class work specific to the matching of shoe and tire imprints, had testified only twice before regarding tire-print comparisons," and that the "bulk" of his job was doing fingerprint analysis. *Id*. at 529. The defendant objected based on Jumper's "relative lack of experience, training, and education in the specific area of shoe- and tire-imprint comparison." *Ibid*. The trial court overruled the objection, and Jumper testified that the defendant's shoes and tires were consistent with impressions found at the scene of the crime. *Id*. at 529-30. The Court of Criminal Appeals held that tire impression testimony was "liberally allowed" because "the field of tire and shoe comparisons is not particularly complex, the witness's opinions are not conclusive, and consequently, they are generally not pivotal to the resolution of the case." *Id*. at 534.

In *Bryant v. State*, the defendant was charged with aggravated sexual assault of a child, and the State offered evidence from a police officer

11

regarding the predatory grooming of children by sex offenders. *Bryant v. State*, 340 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). The defendant objected that the officer was not qualified; he had been working as an investigator of crimes against children for less than two-and-a-half years, but he had received training regarding crimes against children and had been to "conferences and all kinds of different training." *Id*. at 7-8. The trial court overruled the defendant's objections and allowed the witness to testify regarding various ways in which sexual predators build rapport with their victims. *Id*. at 8.

On appeal, the First Court looked at the various *Rodgers* factors and determined that the trial court did not abuse its discretion. *Id*. at 9-10. First, "the field of the witness's expertise was not particularly complex," as "grooming" consisted of little more than the "relatively common-sense proposition that an adult must establish some level of rapport with a child before being able to manipulate the child into sexual conduct." *Id*. at 9. Second, the testimony was not conclusive to any fact issue, it simply provided background information. *Ibid*. And third, the testimony was not central to the State's case, as it was not "directly relevant to the elements of the charged crime." *Id*. at 10. Therefore, because the witness's qualifications were marginal

to the case, the appellate court could not conclude that the trial court's determination of the witness's qualifications was a clear abuse of discretion.

In this case, the *Rodgers* factors show that the trial court did not abuse its discretion. Ponder testified to the meaning of tattoos, an area that is not complex. A large part his testimony consisted of simply reading the tattoos aloud and explaining how that tattoo related to gang activity. (*See, e.g.*, 9 RR 75 ("Right here it says BK. BK is a common term used by Crips. BK essentially [means] "Blood killer", disrespecting Bloods."). The trial court had pictures of the tattoos that it could examine on its own. Second, Ponder explicitly noted that his evidence was not conclusive as to whether the appellant was a gang member. And third, the evidence was not "central" to the State's punishment case; the appellant was being punished for the aggravated robbery of an Autozone, and the gang-tattoo evidence was offered merely as a contextual guide to the appellant's life. In this context, the trial court did not abuse its discretion in determining that Ponder's extensive experience and training regarding criminal street gangs was adequate to allow him to testify about the appellant's tattoos.

## Reply to Point Two

**The appellant's second point presents nothing for this Court's review because it provides no argument as to why a relevancy complaint should be addressed as a constitutional violation.**

In his second point of error, the appellant claims that Ponder's testimony violated his state and federal constitutional rights because the State did not elicit sufficient information regarding gangs. (Appellant's Brief at 19). The appellant's complaint in this point regarding Ponder's testimony is that, because the State did not provide the trial court with contextual evidence regarding the Bloods and the Crips, Ponder's testimony was irrelevant. (Appellant's Brief at 19). However, neither at trial — where the appellant made a shotgun objection invoking a half-dozen constitutional provisions — nor on appeal has the appellant presented any argument as to why this complaint is one of constitutional dimension and not just a run-of-the-mill relevancy issue. None of the cases cited by the appellant treat relevancy as a constitutional concern, and he gives this Court no argument as to why it should. Accordingly, this Court should reject the appellant's second point as inadequately briefed.

## Reply to Point Three

**There is no sufficiency review for extraneous offenses presented during the punishment phase. Moreover, the State's evidence proved an extraneous bad act beyond a reasonable doubt.**

In the punishment phase, the State admitted evidence regarding the robbery of a Family Dollar store six days prior to the AutoZone robbery. (9 RR 85-88). The Family Dollar robbery was conducted in a similar manner to the AutoZone robbery — two masked black males armed with pistols rushing in and forcing the store manager to put money into a bag that the robbers brought with them — and the same black Impala used in the AutoZone robbery was observed nearby. (9 RR 87-90, 98-100). In his third point of error, the appellant claims that:

> The trial court violated [the appellant's] substantial rights when it improperly considered evidence of an extraneous robbery at the punishment portion of [the appellant's] trial when [the appellant's] involvement in that robbery was not sufficiently supported by the record.

(Appellant's Brief at 21).

Defense counsel did not object when this evidence was admitted, but when the prosecutor referenced the Family Dollar robbery during closing argument defense counsel objected based on the lack of evidence that the appellant was involved in the robbery. (10 RR 27). The trial court responded

15

by noting that the evidence was admitted without objection, and then stating: "[A]s the finder of fact, I'll determine what I believe … what was or was not proven in the punishment phase." (10 RR 27).

Shortly before pronouncing sentence, the trial court expressed some disgruntlement at the lack of evidence regarding certain matters in the punishment phase. (10 RR 29). First, while there was evidence that the appellant, while a juvenile, had murdered his uncle, there was also some hearsay testimony that the appellant had killed his uncle in response to some sexual or physical abuse; the trial court seems to have wanted more information on this point. (*See* 10 RR 29).

Second, the trial court noted the evidence concerning the Family Dollar robbery: "And while, your face apparently was not picked out by the women at the robbery a week before this, the [*modus operandi*] was the same. The bag was identified, the masks were identified, the car, the license plate, all of that." (10 RR 29).

The trial court then noted that it should, perhaps, levy a harsh sentence based on the fact that a co-defendant in the AutoZone robbery had received a life sentence from a jury. (10 RR 30). The trial court then assessed punishment at confinement for thirty-five years. (10 RR 30).

Code of Criminal Procedure Article 37.07 allows, in the punishment phase, the introduction of extraneous bad acts that are shown beyond a reasonable doubt to have been committed by the defendant. TEX. CODE CRIM. PROC. art. 37.07 §3(a)(1). This is, by its terms, an evidentiary rule, not a rule that entitles a defendant to sufficiency review of the evidence presented against him in the punishment phase. *See, e.g., Malpica v. State*, 108 S.W.3d 374, 378-79 (Tex. App.—Tyler 2003, pet. ref'd). The only review to which a defendant is entitled is whether the trial court abused its discretion in admitting the evidence. *Ibid*. As the appellant did not object to the admission of the robbery evidence in this case, there is no ruling on admissibility for this Court to review and it should reject the appellant's third point.

The appellant presents his argument as a due-process claim, but that, too, fails. The appellant notes the Court of Criminal Appeals's dicta from *Smith v. State*, 227 S.W.3d 753 (Tex. Crim. App. 2007), that it would violate due process if extraneous offenses were factored in a defendant's sentence despite the fact that there was "no evidence from any source from which it could be rationally inferred that the defendant had any criminal responsibility for that extraneous misconduct." (Appellant's Brief at 21 (citing *Smith*, 227 S.W.3d at 764)). This is certainly true, but not applicable to this case for two reasons. First, Though the trial court referenced the Family Dollar robbery before

17

pronouncing sentence, its statement was ambiguous as to whether the Family Dollar robbery was a factor in the sentence. *See Thompson v. State*, 4 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) ("Because the verdict on punishment in a non-capital criminal case is a general verdict, an appellate court cannot determine whether the jury considered the evidence of the extraneous offense or if it affected the jury's determination of punishment."). And second, while it may be in dispute as to whether the State admitted enough evidence to show, beyond a reasonable doubt, that the appellant committed the Family Dollar robbery, there surely was *some* evidence that he was involved; as the trial court noted, the same getaway vehicle was involved, the same money bag was involved, and the robbers used the same *modus operandi*.

Moreover, even if the State's proof would not be sufficient to convict the appellant of the Family Dollar robbery, the facts of that robbery show, beyond a reasonable doubt, that the appellant was closely connected to a group that committed multiple armed robberies. The evidence of the Family Dollar robbery shows that the AutoZone robbery was not a fluke. The appellant's involvement with an organized armed-robbery ring surely was relevant to considering his punishment.

The appellant's third point should be overruled because he did not object to the admission of the evidence and thus has not preserved any claim under Article 37.07. The appellant's due process claim fails because the State's evidence was at least *some* evidence connecting the appellant to the Family Dollar robbery, and it was proof beyond a reasonable doubt that the appellant committed the extraneous bad act of being involved in an organized armed-robbery ring.

## Conclusion

The State respectfully submits that all things are regular and the judgment of the trial court should be affirmed.

DEVON ANDERSON
District Attorney
Harris County, Texas


/s/ C.A. Morgan
CLINTON A. MORGAN
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002-1923
(713) 755-5826
Texas Bar No. 24071454

**Certificate of Compliance and Service**

I certify that, according to Microsoft Word's word counting function, the portion of this brief for which Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 3,859 words.

I also certify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to:

Daucie Schindler
Daucie.Schindler@pdo.hctx.net

/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
Texas Bar No. 24071454

Date: January 14, 2015