FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TIAHMO LENELL DRAINE,

    Defendant - Appellant.

No. 20-6118

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:19-CR-00319-F-1)**
_____

Adam Mueller, Haddon, Morgan and Foreman, P.C., Denver, Colorado for Defendant - Appellant

Ashley L. Altshuler, Assistant United States Attorney (Robert J. Troester, Acting United States Attorney, with him on the brief), Oklahoma City, Oklahoma for Plaintiff - Appellee
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

A jury convicted Tiahmo Lenell Draine of possession with intent to distribute heroin, possession of a firearm as a felon, and possession of a firearm in furtherance of a drug trafficking crime. On appeal, he argues that the district court

(A)  plainly erred, in violation of Federal Rules of Evidence 701 and 702, by admitting testimony from law enforcement officers based on their specialized training and experience without sua sponte qualifying them as experts;

(B)  plainly erred, in violation of Federal Rule of Evidence 704(b), by admitting opinion testimony about Mr. Draine's mental state—his intent to distribute heroin; and

(C)  admitted a 911 call recording (i) without proper authentication, and (ii) in violation of the Confrontation Clause.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *Factual History*

On July 3, 2019, shortly after midnight, a woman called 911. She told the operator she was driving on Lake Hefner Parkway. She said someone in a gray Chevy pickup truck had shot at her when she was in her car near a 7-Eleven. She further reported that the truck was following her.

Oklahoma City Police Sergeant Bryan Poole received the 911 dispatch while located a half mile from Lake Hefner Parkway. As Sergeant Poole sped toward the caller's location, he saw a truck matching the description. He followed the truck until it stopped in front of a house.

Mr. Draine opened the driver's side door of the truck and stepped out. He squatted in front of the truck as if he was "taking cover behind the vehicle." Suppl. ROA, Vol. I at 33. Sergeant Poole could see a passenger in the front seat of the truck. Mr. Draine ignored Sergeant Poole's commands to stop moving and put his

hands up.  Mr. Draine kept walking around the truck and then took off a backpack and put it inside the truck.  After placing the backpack inside the truck, he became compliant.

After backup officers arrived to help Sergeant Poole detain Mr. Draine and his passenger, they discovered a gun underneath the truck behind the driver's side front tire, near where Mr. Draine had been squatting.  When asked for identification, Mr. Draine told the officers it was inside his backpack.  Sergeant Poole looked in the backpack and found a digital scale, 2.2 grams of heroin, two silicone disks, and three notebooks.  One notebook was labeled "OWE $" and had a list of names, dates, and dollar amounts.  Mr. Draine was arrested and then released on bond on July 6, 2019.

On July 29, 2019, Oklahoma City Police Sergeant Jonathan Wilson and Officer Blake Lawson stopped Mr. Draine and two passengers for a traffic violation. During a search of Mr. Draine's vehicle, Officer Lawson found a duffel bag that contained 9.5 grams of heroin, 3.64 grams of methamphetamine, 5.64 grams of marijuana, and $207 in cash wadded up and stuffed into different pockets.  The officers also found a scale, some syringes, small Ziploc baggies, and a glass pipe inside the vehicle.

## B. *Procedural History*

In October 2019, a federal grand jury indicted Mr. Draine on three counts for his conduct on July 3, 2019:  Count 1 – possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1); Count 2 – being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and Count 3 – possession of a firearm in

furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  At trial, Mr. Draine contested only his intent to distribute, arguing he was not guilty of the greater offense charged in Count 1 (simple possession of heroin was a lesser included offense) or the Count 3 offense.

At trial, the Government called Sergeant Poole and Officer Lawson to testify.[1] The defense called one witness, Oklahoma City Police Officer David Pennington.[2]

1. **Sergeant Poole's Testimony**

On direct examination, the Government asked Sergeant Poole about his training and experience in his 12 years as a police officer.  He confirmed the following facts:

- He was "typically . . . involved in cases involving controlled substances."
- He had "become familiar with the substance known as heroin" and made roughly 12 heroin arrests.
- He "also received training in the academy" and had "spoken to peers that [he] work[ed] with as specialized training involving the distribution" of heroin.
- "[B]ased on" his "experience speaking with those individuals," he had "gained some familiarity with how" heroin "is sold at the street level," and "how it is packaged for sale."
- He was "familiar . . . with the dosage units of" heroin.

---

[1] The Government also called four other witnesses from the Oklahoma City Police Department, but their testimony is not at issue on appeal.

[2] Officer Pennington was a robbery detective with the Oklahoma City Police Department and served on a task force run by the U.S. Bureau of Alcohol, Tobacco, and Firearms and Explosives.

Suppl. ROA, Vol. I at 22-23. The Government repeatedly invoked Sergeant Poole's training and experience. *See id.* at 45-52, 54, 72. We quote examples here:

> **GOVERNMENT**: [B]ased on your training and experience, what is a typical dosage unit of heroin?
>
> **SERGEANT POOLE**: Heroin, they sell in a couple different things. They sell big and smalls. Bigs are usually like .9 to one gram. They're usually 70, $80. They sell smalls, which are normally about half a gram. They go for 40 to 50. And then they'll sell just kind of single doses, which is normally, you know, .2 grams, those are normally 20, $25.
>
> . . .
>
> **GOVERNMENT**: So "Owe Money" with a list of names in it, what would that mean?
>
> **SERGEANT POOLE**: People that owe him money.
>
> **GOVERNMENT**: So people he fronted drugs to—
>
> **SERGEANT POOLE**: Yes.
>
> **GOVERNMENT**: [I]n your training and experience?
>
> **SERGEANT POOLE**: Yes, sir.
>
> . . .
>
> **GOVERNMENT**: And how would the digital scale have any association or relation with possessing drugs for distribution?
>
> **SERGEANT POOLE**: It would—basically, when you go to sell drugs, you'll weigh it for the person so they know they're getting what they're paying for and not getting ripped off, not getting half of what they're paying for or anything like that.
>
> . . .

5

> **GOVERNMENT**: And based on your training and experience, do you have an opinion regarding those [silicone] disks, if they're used at all for heroin?
>
> **SERGEANT POOLE**: Yes, the top one, the multicolor one still had approximately .2 grams of heroin in it. The bottom one that's closed just had some residual brown residue that looked just like the residue on the scale.
>
> **GOVERNMENT**: So placing heroin in those items, does that have any association with possessing with intent to distribute?
>
> . . .
>
> **SERGEANT POOLE**: If you're selling single doses, that's exactly what's in that top colored silicone disk.

*Id.* at 49-52, 54.[3]

2. **Officer Lawson's Testimony**

Officer Lawson testified about the July 29, 2019 traffic stop of Mr. Draine and finding cash and drugs in the vehicle. The court admitted the testimony under Federal Rule of Evidence 404(b) to show Mr. Draine's intent and knowledge of the charged conduct on July 3. When asked about his training and experience, Officer Lawson said he had made over 50 arrests for controlled substances and had consulted with officers in "a specialized unit that goes out and fights street level narcotic crimes." *Id.* at 120-21.

---

[3] The Government also invoked Sergeant Poole's training and experience on re-direct examination to elicit testimony that "Super 8" in the "OWE $" notebook referred to a "Super 8 motel . . . associated with unlawful drug activity." Suppl. ROA, Vol. I at 72.

Officer Lawson testified that the $207 in cash he found "was throughout the whole [duffel] bag in different pockets and it was all wadded up, as if it was placed at different times just to get it in the bag." *Id.* at 121. The following exchange invoked his training and experience:

> **GOVERNMENT**: The weights as you weighed the heroin, is that weight a large amount, based on your training and experience, or a small amount?
>
> **OFFICER LAWSON**: A large amount.
>
> **GOVERNMENT**: And is it an amount consistent, based on your training and experience, with distribution or sharing or personal use?
>
> **OFFICER LAWSON**: It would be definitely [sic] a distribution. It would be used for distribution.
>
> . . .
>
> **GOVERNMENT**: [T]his digital scale, is that utilized in any way associated with drugs?
>
> . . .
>
> **OFFICER LAWSON**: To weigh whenever you're wanting to sell it so you're giving the correct amount for what the person buying the drugs, they're getting the right amount and they give you the right amount of money.
>
> . . .
>
> **GOVERNMENT**: Do[] [the three small Ziploc bags] have any significance, based on your training and experience, regarding drug sales—
>
> . . .
>
> **OFFICER LAWSON**: Commonly, when people are selling drugs, they have them split into those little small

plastic baggies and that's where they're already preweighed and you can just give those and then take the money.

*Id.* at 122-25.

### 3. Officer Pennington's Testimony

Mr. Draine called Officer Pennington as a defense witness to impeach the credibility of the likely 911 caller, Brooklinn Nicole Brooks, by asking about her criminal record and drug arrests. Mr. Draine ostensibly also called Officer Pennington to show that Ms. Brooks was once arrested for having a similar amount of heroin compared to the amount he possessed on July 3, 2019, but was not charged with intent to distribute. Officer Pennington knew that Ms. Brooks had been arrested in September 2019 for having two bags of heroin weighing 3.65 grams (including packaging). When asked if she "was charged with a felony possession with intent" or "a misdemeanor simple possession of heroin," he said the latter. *Id.* at 164.

On cross-examination, the prosecution asked Officer Pennington, "based on [his] training and experience," how much heroin was found during Ms. Brooks's arrest. *Id.* at 167-68. He said the net weight (not including packaging) was roughly 1.65 grams. The following exchange then occurred:

> **GOVERNMENT**: And in that case [Ms. Brooks's September 2019 arrest], was [sic] there any drug ledgers found or anything to, based on your training and experience, indicate that Ms. Brooklinn Brooks possessed those drugs with intent to distribute?
>
> **OFFICER PENNINGTON**: Not to my knowledge.

8

> **GOVERNMENT**:  So there's a distinction there between [the] possession with intent charge and simple possession; is that fair?
>
> **OFFICER PENNINGTON**:  That's fair.

*Id.* at 168.  The Government then showed the page inside the "OWE $" notebook, with names, dollar amounts, and dates listed, leading to the following exchange:

> **GOVERNMENT**:  Based on your training and experience, what do you believe this to be, based on the totality of the circumstances in this case and reasonable inferences based on the evidence?
>
> **OFFICER PENNINGTON**:  It's a list of names and dollar amounts.  I assume customers who had either been fronted heroin or sold heroin.
>
> **GOVERNMENT**:  And in fact, the title of that composition book is "Owe $," is that correct?
>
> **OFFICER PENNINGTON**:  That's correct.
>
> **GOVERNMENT**:  What do you refer that to [sic] as, based on your training and experience?
>
> **OFFICER PENNINGTON**:  I would say that that was drugs that had been fronted and this is money that is owed for those drugs.
>
> **GOVERNMENT**:  Okay.  And . . . based on your training and experience, are these nine individuals listed drug customers, based on reasonable inferences and the evidence?
>
> **OFFICER PENNINGTON**:  Yes.

*Id.* at 169.

*          *          *          *

9

The jury found Mr. Draine guilty on all three counts.  The district court

sentenced him to 130 months in prison and three years of supervised release.

## II. **DISCUSSION**

The following discussion concludes that the district court did not

> (A)  plainly err, in violation of Federal Rules of Evidence 701 and 702, by admitting law enforcement officer opinion testimony without sua sponte qualifying the officers as experts.  Mr. Draine cannot show an error was plain; affected his substantial rights; or seriously affected the fairness, integrity, or public reputation of judicial proceedings.

> (B)  plainly err, in violation of Rule 704(b), by admitting testimony from Officer Lawson and Officer Pennington because neither witness opined on Mr. Draine's mental state.

> (C)  (i) abuse its discretion in ruling that the Government authenticated the 911 call recording, or (ii) violate the Confrontation Clause by admitting the recording.

### A. *Rule 702 Expert Opinion Testimony*

The first issue concerns whether it was plain error for the law enforcement

witnesses to provide expert opinion testimony without the district court first

determining whether they were qualified to do so under Rule 702.

1. **Standard of Review**

When "the defendant did not make a contemporaneous objection to the

admission of testimony" and thereby forfeits the issue, we review an appellate

challenge to the evidence for plain error.  *United States v. Moya*, 5 F.4th 1168, 1188

(10th Cir. 2021) (quotations omitted), *cert. denied*, 142 S. Ct. 385 (2021).  Under this

standard, the defendant must establish "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Wright*, 848 F.3d 1274, 1278 (10th Cir. 2017) (quotations omitted).

## 2. Legal Background

In drug prosecutions, opinion testimony from law enforcement officers may be based on the case investigation or on the officer's training and experience. *See United States v. Cushing*, 10 F.4th 1055, 1079-80 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 813 (2022). Although the line is not always clear, "a law-enforcement officer's testimony based on knowledge derived from the investigation of the case at hand is typically regarded as lay testimony" under Rule 701, and "opinion testimony premised on the officer's professional experience as a whole is expert testimony" under Rule 702. *Id.* at 1080 (quotations omitted); *see United States v. Marquez*, 898 F.3d 1036, 1050 (10th Cir. 2018). The same officer may "provide both lay and expert testimony in a single case." Fed. R. Evid. 701 advisory committee notes to 2000 amendments; *see United States v. Sandoval*, 680 F. App'x 713, 718-19 (10th Cir. 2017) (unpublished).[4]

In this case, the parties agree that the officers' challenged testimony was "subject to the admissibility requirements for expert testimony under Rule 702."

---

[4] Although not precedential, we find the reasoning of unpublished decisions cited in this opinion instructive. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

Aplee. Br. at 16 n.8; *see* Aplt. Reply Br. at 8.  At trial, the Government did not ask the court to determine whether the officers' testimony would satisfy Rule 702, the district court did not sua sponte do so, and Mr. Draine did not object.  On appeal, Mr. Draine argues the district court plainly erred because it failed to determine whether the officers were qualified to give expert testimony under Rule 702 and instead let the officers testify as lay witnesses in violation of Rule 701(c).  *See, e.g.*, Aplt. Br. at 16-20.[5]

Rules 701 and 702 set forth different requirements for the admission of lay and expert opinion testimony, respectively.

Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

---

[5] At oral argument, Mr. Draine's counsel argued that the district court not only failed to determine whether the officers were qualified to testify as experience-based experts, but also whether their testimony met Rule 702's reliability requirements. But Mr. Draine did not present that argument in his opening brief, in which he merely quotes the reliability elements of Rule 702, so it is waived. *See Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1271 (10th Cir. 2020) ("[F]ailure to raise an issue in an opening brief waives that issue . . . ." (quotations omitted)).  Although his reply brief mentions reliability, Aplt. Reply Br. at 6, 8, Mr. Draine neither develops an argument nor does he attempt to show a plain error.

In any event, Sergeant Poole's and Officer Lawson's backgrounds as drug investigators show the Government likely would have established the reliability of their testimony had Mr. Draine objected at trial. *See United States v. Garza*, 566 F.3d 1194, 1198-99 (10th Cir. 2009) (rejecting defendant's Rule 702 reliability challenge to officer's expert testimony).

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Section (c) was added to Rule 701 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee notes to 2000 amendments. "[T]he amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson." *Id.*[6]

---

[6] Federal Rule of Criminal Procedure 16 provides:
At the defendant's request, the government must give to the defendant a written summary of any testimony that the

13

Our cases have explained the difference between Rule 701 lay opinion and Rule 702 expert opinion. "Rule 701 does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (quotations omitted). This is because "knowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *Id.* at 1215 (quotations and alterations omitted); *see also United States v. Richter*, 796 F.3d 1173, 1194-95 (10th Cir. 2015). Thus, "[w]hen the subject matter of proffered testimony constitutes scientific, technical, or other specialized knowledge, the witness must be qualified as an expert under Rule 702." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (quotations omitted); *see also United States v. Bishop*, 926 F.3d 621, 627 (10th Cir. 2019); *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011).

---

government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. Fed. R. Crim. P. 16(a)(1)(G).

14

3. **Analysis**

We affirm because Mr. Draine cannot meet his burden under the "rigorous" and "demanding" plain error standard. *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (quotations omitted).

a. *Prong one*

We assume without deciding that the district court erred by not sua sponte determining whether Sergeant Poole, Officer Lawson, and Officer Pennington were qualified to present expert testimony under Rule 702.[7]

b. *Prong two*

Mr. Draine has not established any error was "plain—that is to say, clear or obvious." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018). "To be obvious, an error must be contrary to well-settled law." *United States v. Koch*, 978 F.3d 719, 726 (10th Cir. 2020) (quotations omitted). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *Id.* (quotations omitted).

---

[7] The ensuing analysis is limited to Sergeant Poole and Officer Lawson. On appeal, Mr. Draine objects for the first time to Officer Pennington's purported expert testimony on cross-examination, which was mostly about the "OWE $" notebook. His objection lacks merit. Officer Pennington's testimony was duplicative of Sergeant Poole's testimony and sparse by comparison. *See* Suppl. ROA, Vol. I at 50-51, 168-69. Mr. Draine even describes Officer Pennington's cross-examination testimony as "brief." Aplt. Br. at 24. He cannot show that the exclusion of that testimony would have affected his substantial rights at prong three of plain error review. We therefore affirm as to Officer Pennington.

In his opening brief, Mr. Draine argues the error was plain based on *United States v. McDonald*, 933 F.2d 1519 (10th Cir. 1991); *United States v. Muldrow*, 19 F.3d 1332 (10th Cir. 1994); and *United States v. Banks*, 262 F. App'x 900 (10th Cir. 2008) (unpublished). Aplt. Br. at 23. But these cases show no such thing.

In *McDonald*, we upheld the district court's admission of expert law enforcement testimony even though "the trial court never formally accepted the police officer as an expert witness." 933 F.2d at 1522-23 & n.2. In *Muldrow*, we again upheld the district court's admission of expert law enforcement testimony, 19 F.3d at 1338, and did not address the argument Mr. Draine makes here—that the officers' testimony should have been excluded because it was expert testimony masquerading as lay opinion. And in *Banks*, which is unpublished and non-precedential, the defendant, unlike Mr. Draine, objected at trial. *See* 262 F. App'x at 907.

In fact, we have not provided clear guidance as to whether district courts should address sua sponte a law enforcement officer's qualifications to provide expert testimony under Rule 702 when the defendant does not object. We have even "question[ed] whether there is any error in admitting expert-opinion testimony without a judicial ruling on the witness's qualifications when no objection has been raised to the testimony." *United States v. Cristerna-Gonzalez*, 962 F.3d 1253, 1260 (10th Cir. 2020). It follows that if the district court committed any error, it was not plain under existing law.

16

c.  *Prong three*

Mr. Draine has not shown how any error affected his substantial rights—that is, "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles*, 138 S. Ct. at 1904-05 (quotations omitted).

In particular, he has not shown that, had he objected or had the district court addressed sua sponte Sergeant Poole's or Officer Lawson's qualifications, they likely would have been found unqualified under Rule 702.  Sergeant Poole testified about his 12 years of experience as a police officer, arrests involving heroin, academy training, specialized training involving the distribution of heroin, and familiarity with how heroin is sold and packaged and its dosage units.  Suppl. ROA, Vol. I at 22-23.  And Officer Lawson testified about having made over 50 arrests involving controlled substances and training through consultation with members of a specialized narcotics unit.  *Id.* at 120-21.  We "have repeatedly admitted similar testimony from qualified law-enforcement witnesses" with similar training and experience.  *Cristerna-Gonzalez*, 962 F.3d at 1260; *see id.* (collecting cases); *see, e.g.*, *United States v. Duran*, 941 F.3d 435, 452 (10th Cir. 2019) (agent with "over 16 years' experience in law enforcement, including observation of 75 to 100 drug deals and more than 50 controlled buys" could testify as an expert in drug case), *cert. denied*, 140 S. Ct. 1227 (2020).

In short, Mr. Draine has not shown a reasonable probability that Sergeant Poole's or Officer Lawson's testimony would have been excluded under Rule 702 had the district court addressed the issue.[8]

d. *Prong four*

Finally, Mr. Draine has not met his "burden to persuade the court that the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles*, 138 S. Ct. at 1909 n.4 (quotations and alterations omitted). "[A]ny exercise of discretion at the fourth prong . . . inherently requires a case-specific and fact-intensive inquiry." *Id.* at 1909 (quotations omitted); *see also United States v. Bustamante-Conchas*, 850 F.3d 1130, 1141 (10th Cir. 2017).

Here, as noted above, "[d]espite the procedural shortcomings he alleges, Mr. [Draine] was convicted based on the type of opinion testimony that courts routinely admit from officers with the proper qualifications." *Cristerna-Gonzalez*, 962 F.3d at 1269 (Matheson, J., concurring). "In drug cases, expert testimony is often admitted to help the jury understand drug terminology" and concepts. *Marquez*, 898

---

[8] Mr. Draine argues that the error affected his substantial rights because he "did not receive any expert reports, resumes, or descriptions of opinions," as required under Federal Rule of Criminal Procedure 16(a)(1)(G). Aplt. Br. at 25. But we have said Rule 16 "states that the government must disclose the experts that it intends to call at trial *if the defendant requests their disclosure*." *Garza*, 566 F.3d at 1200. At oral argument, Mr. Draine's counsel conceded "it is not in the record whether a request was made." Oral Arg. at 12:00-06. "Thus, we have no reason to think that his right to pretrial notice of [the officers'] testimony was triggered." *Garza*, 566 F.3d at 1200. Although the Government said it "believe[d] such a [discovery] request may have been made in this case," Oral Arg. at 16:37-59, it is Mr. Draine's burden to establish each prong of plain error. He cannot do so on the Rule 16 issue.

F.3d at 1051.  There was thus nothing unusual about the law enforcement testimony provided at Mr. Draine's trial.  As we have said, "there is no problem with the nature of the testimony when a qualified law-enforcement officer testifies about components of drug distribution, including . . . indicators of illicit drug operations, common tools of the drug trade, [and] records of drug business."  *Cushing*, 10 F.4th at 1080 (quotations omitted).  We "see no need to exercise our discretion to correct the error under the fourth prong."  *United States v. Trujillo*, 960 F.3d 1196, 1208 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 2812 (2021).  "[A]dmission of the testimony did not undermine the fairness, integrity, or public reputation of the proceedings."  *Cristerna-Gonzalez*, 962 F.3d at 1269 (Matheson, J., concurring).

*    *    *    *

In sum, Mr. Draine has not shown the district court plainly erred.[9]

---

[9] Although we affirm the district court on the Rule 702 issue, when law enforcement officers are expected to provide experience-based testimony at trial, the issue addressed here could be resolved, when feasible, more efficiently and consistent with the purpose of Rule 702, through pretrial determination under Rule 104(a) as to whether the law enforcement officer satisfies the requirements of Rule 702.  *See United States v. Baines*, 573 F.3d 979, 981 (10th Cir. 2009) (district court granted defendant's motion under Rules 104(a) and 702 for "a pretrial hearing on the admissibility of the government's expert testimony"); *see also* 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 104.12[2][b], at 104-14 (Mark S. Brodin, ed., Matthew Bender 2d ed. 2021).

B. *Rule 704(b) Expert Opinion Testimony*

Mr. Draine argues that Officer Lawson's and Officer Pennington's testimony violated Rule 704(b).[10]  We also review this issue for plain error because Mr. Draine did not raise it before the district court.  *See Moya*, 5 F.4th at 1188.

1.  **Legal Background**

Federal Rule of Evidence 704(b) provides:  "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."  Fed. R. Evid. 704(b).

"As interpreted, Rule 704(b) only prevents experts from expressly stating the final conclusion or inference as to a defendant's actual mental state."  *United States v. Richard*, 969 F.2d 849, 854 (10th Cir. 1992);[11] *see also United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1137 n.16 (10th Cir. 2014).  "The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state."  *Richard*, 969 F.2d at 854-55.  "It is only as to the last step in the inferential process—a conclusion as to the defendant's actual mental state—that Rule 704(b) commands the expert to be silent."

---

[10] Mr. Draine does not make a Rule 704(b) challenge to Sergeant Poole's testimony.

[11] Post-*Richard*, Rule 704(b) was amended in 2011 by "delet[ing] all reference to an 'inference,'" but the changes were "intended to be stylistic only."  Fed. R. Evid. 704 advisory committee notes to 2011 amendments.

20

*United States v. Goodman*, 633 F.3d 963, 970 (10th Cir. 2011) (quotations omitted); *see also Moya*, 5 F.4th at 1189; *United States v. Torres*, 53 F.3d 1129, 1142 (10th Cir. 1995).

For example, "[a]n expert on illegal drug activities may testify that the amount and packaging of drugs found in the defendant's possession by the police are consistent with the distribution of drugs for street use rather than with holding the drugs for personal use." 4 Weinstein & Berger, *Weinstein's Federal Evidence* § 704.06[2][d], at 704-28. "What is proscribed is questioning that produces responses suggesting some special knowledge of the defendant's mental processes." *Id.* § 704.06[2][d], at 704-28-29.

Rule 704(b) "do[es] not prevent an expert from drawing conclusions about intent, so long as the expert does not profess to know a defendant's intent," *United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013), or whether the defendant "acted with the necessary mens rea," *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000).

2. **Analysis**

Neither Officer Lawson nor Officer Pennington gave testimony that violated Rule 704(b). Mr. Draine thus cannot establish error, let alone plain error.

a. *Officer Lawson's testimony*

Mr. Draine argues that Officer Lawson's testimony violated Rule 704(b) because he said the "large amount" of heroin found in the duffel bag on July 29, 2019, would "definitely [be] a distribution" and "would be used for distribution."

Suppl. ROA, Vol. I at 123.  Mr. Draine says the testimony implied that if he "was 'definitely' distributing heroin on July 29 (the date of the 404(b) incident), so too was he 'definitely' distributing heroin on July 3 (the date of the charged offense)." Aplt. Br. at 22.

None of this shows that Officer Lawson opined on Mr. Draine's intent to distribute.  Officer Lawson testified that the amount of heroin indicated distribution. He never made "a conclusion as to [Mr. Draine's] actual mental state," *Goodman*, 633 F.3d at 970, and "d[id] not profess to know [his] intent," *Schneider*, 704 F.3d at 1294.  And because Officer Lawson testified regarding the amount of heroin found in Mr. Draine's possession on July 29, his testimony was further attenuated from any conclusion as to whether Mr. Draine had "a mental state or condition that constitutes an element of the crime charged" on July 3.  Fed. R. Evid. 704(b).

b.  *Officer Pennington's testimony*

Mr. Draine argues Officer Pennington's cross-examination testimony established that while Ms. Brooks did not possess drugs with the intent to distribute, "Mr. Draine surely did," and "[t]he message was unmistakable," for example, because Officer Pennington referred to the "[O]we $" notebook as listing "nine . . . drug customers."  Aplt. Br. at 22.  Here, again, Officer Pennington never addressed "the last step in the inferential process—a conclusion as to [Mr. Draine's] actual

mental state." *Goodman*, 633 F.3d at 970 (quotations omitted).  The district court

thus did not err.[12]

## C. *911 Call Recording*

Mr. Draine challenges the district court's admission of the 911 call recording.

First, he argues the court admitted the recording without a sufficient foundation "that

it was the particular 911 call placed in this case."  Aplt. Br. at 28.  Second, he argues

admission of the recording violated the Confrontation Clause.  Unlike the expert

testimony issues discussed above, Mr. Draine raised these objections before the

district court.  We hold the district court did not err on either ground.

At trial, the jury heard the full recording of a woman's 911 call on July 3,

2019.  Here is an excerpt:

> **CALLER**:  There's someone following me, and I don't
> know what—I'm going so fast down the highway.  They
> shot at me.  I don't know what's going on.
>
> **OPERATOR**:  Where are you at?
>
> **CALLER**:  I'm on I-44, uh, northbound.  It's a gray truck.
> Uh, I don't know.  Black male, probably 40s, uh, with a
> white girl.  I don't know.  I just, I don't know.  I don't
> know.  Something transpired at a 7-Eleven, and I pulled
> out, and I realized they were behind me.  And then he shot
> at me.  And I don't know.  I don't know.

---

[12] Mr. Draine attempts to analogize his case to *Banks*, 262 F. App'x 900. *Banks* held there was a Rule 704(b) error when the officer testified, "I believe that the defendant . . . was most definitely distributing illegal methamphetamine for the purpose of obtaining money."  *Id.* at 907-08.  *Banks* is distinguishable because here, neither Officer Lawson nor Officer Pennington testified about the explicit "purpose" or intent of Mr. Draine's conduct.  And as noted above, *Banks*, which is unpublished, is not binding.

. . .

**OPERATOR**: They're still right behind you?

**CALLER**: Yes. Oh my god. He's next to me. He's next to me. He's next to me. He's next to me. I'm on the phone with the police, b--tch. Oh my god [inaudible].

**OPERATOR**: Where did this happen at?

**CALLER**: He's going to kill me. He's going to kill me.

**OPERATOR**: Where did this happen at?

**CALLER**: 7-Eleven on [inaudible]. I don't know. I'm so sorry. Oh my god. I'm so frazzled. I'm so sorry. I'm so sorry.

. . .

**OPERATOR**: Okay, what street are you passing now?

**CALLER**: I'm not passing anything. I'm about to be passing [inaudible]. And I thought I lost him earlier. But then he caught up to me. Please [inaudible]. Let me keep driving. Oh my god. Oh my god. I'm not stopping. I'm not stopping. He fell back. I think he realized I was on the phone with the police. Because I flashed my phone in the window. Woah. Oh my god, a cardboard box just hit my f--king car. I'm sorry.

**OPERATOR**: A car just what?

**CALLER**: A cardboard box just came flying at my windshield.

. . .

**CALLER**: Uh, they're a little bit further back. I know this is dangerous, but I turned my lights off. I'm terrified.

Suppl. ROA, Doc. 10827503 ("Government's Ex. #1"), at 00:13-3:12.

1.  **Authentication**

    a.  *Standard of review*

"When deciding whether evidence was properly admitted or excluded, we use an abuse of discretion standard of review, defined in this circuit as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991) (quotations omitted); *see also United States v. Willis*, 826 F.3d 1265, 1270 (10th Cir. 2016). Even if "the government could have laid the foundation for [the exhibit] in a more thorough manner," we will not reverse if "it presented sufficient circumstantial evidence to place the admission of [the exhibit] within the broad discretion of the trial court." *Hernandez-Herrera*, 952 F.2d at 345.

    b.  *Legal background*

Under Federal Rule of Evidence 901(a), "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." In other words, authentication, a "condition precedent to the admission of real evidence[,] is met by providing the proper foundation." *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989). "The rationale for the authentication requirement is that the evidence is viewed as irrelevant unless the proponent of the evidence can show that the evidence is what its proponent claims." *Hernandez-Herrera*, 952 F.2d at 343.

Rule 901(b) provides a non-exhaustive list "of evidence that satisfies [Rule 901(a)'s] authentication requirement," including:

- "[t]estimony that an item is what it is claimed to be," Fed. R. Evid. 901(b)(1);

- "[f]or a telephone conversation, evidence that a call was made to the number assigned at the time to . . . a particular person . . . or a particular business," Fed. R. Evid. 901(b)(6); and

- for public records, "[e]vidence that . . . a document was recorded . . . in a public office as authorized by law," Fed. R. Evid. 901(b)(7)(A).

c.   *Additional procedural history*

At a pre-trial hearing, the court said the 911 call had "to be connected up with this defendant." Suppl. ROA, Vol. IV at 38. Mr. Draine responded that "at this time we're not making that concession." *Id.* at 39. The Government then proffered that the connection

> would come from Traci Clark, who would lay the foundation that [the] call came in on July 3rd at 12:21 a.m. in the morning. Sergeant Poole responds to that call. He's a half hour away from the location of the call coming in, and that would put that call as far as the relevance in connection to this case, Your Honor.

*Id.*[13]

Mr. Draine offered a limited stipulation:

> [I]f the Court does rule that the 911 call comes in, we will stipulate that the custodian of records from OCPD, Traci Clark, would testify to her routine duties and that they keep on file 911 calls and that she has provided this call. That's the extent of our stipulation with that—it's simply to avoid having the custodian of records come in and testify to possessing and providing the call.

---

[13] At trial, Sergeant Poole testified he was a half mile, not a half hour, away from the location of the caller on Lake Hefner Parkway.

26

*Id.* at 40.  The court said Mr. Draine's stipulation "d[id] not connect [the 911 call] to the defendant, so there w[ould] be no reference to it" in the opening statement.  *Id.*

At trial, Sergeant Poole provided foundational testimony.  He testified that on July 3, 2019, at 12:23 a.m., he received a notification from the 911 dispatch center. Suppl. ROA, Vol. I at 25.  He said dispatch "advised that a female caller had called in stating she was driving northbound on Lake Hefner Parkway, [and] was being followed by a gray Chevy pickup who was firing rounds at her."  *Id.*  As Sergeant Poole was driving "northbound on Lake Hefner Parkway trying to catch up to the calling party," he saw "a pickup truck matching that description" "headed northbound."  *Id.* at 26.  The court overruled Mr. Draine's foundational objection and admitted the call recording.  *Id.* at 27.

d.  *Analysis*

The district court did not abuse its discretion in ruling that the Government authenticated the 911 call based on the combination of Mr. Draine's pretrial stipulation and Sergeant Poole's foundational testimony.

Before trial, Mr. Draine stipulated to the authentication of the recording as a 911 call that came in on July 3, 2019, at 12:21 a.m.  The Government proffered that "Traci Clark . . . would lay the foundation that [the] call came in on July 3[] at 12:21 a.m."  Suppl. ROA, Vol. IV at 39.  Then Mr. Draine "stipulate[d] that . . . Traci Clark, would testify . . . that she provided *this call*."  *Id.* at 40 (emphasis added).  Mr. Draine's statements show he stipulated to the date and time of the 911 call.

27

At trial, the Government connected the call to Mr. Draine through Sergeant Poole's testimony. Sergeant Poole stated that (1) on July 3, 2019, at 12:23 a.m., he received a notification from the 911 dispatch center, and (2) soon after located a pickup truck matching the description from the 911 call. Because the Government authenticated the 911 call by establishing its connection to this case, the court did not abuse its discretion.

## 2. **Confrontation Clause**

The district court ruled that the 911 call recording did not violate the Confrontation Clause because the statements in the call were not testimonial. Applying a de novo standard of review, *United States v. Edwards*, 782 F.3d 554, 560 (10th Cir. 2015), we agree.

### a. *Legal background*

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). The clause thus prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Hemphill v. New York*, 142 S. Ct. 681, 690 (2022) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).

28

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822.  As to whether a statement is testimonial, "the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred."  *Michigan v. Bryant*, 562 U.S. 344, 360 (2011); *see also United States v. Ibarra-Diaz*, 805 F.3d 908, 917 (10th Cir. 2015).

b.  *Analysis*

The district court's admission of the 911 call recording did not violate the Confrontation Clause because, under *Davis*, the statements in the call were not testimonial.

First, the caller "was speaking about events *as they were actually happening*,"—the description and location of a truck following her after a shooting— "rather than describing past events."  *Davis*, 547 U.S. at 827 (quotations and alterations omitted).  Although the shooting near the 7-Eleven had already occurred, it did not "t[ake] place hours" ago.  *Id.*

Second, "any reasonable listener would recognize that [the declarant] . . . was facing an ongoing emergency" because her "call was plainly a call for help against

29

[a] bona fide physical threat." *Id.* She said, "I don't know," "He's going to kill me," "Oh my God," and "I'm so frazzled." Government's Ex. #1, at 01:17-40.

Third, "viewed objectively, . . . the elicited statements were necessary to be able to *resolve* the present emergency." *Davis*, 547 U.S. at 827. The operator and caller discussed the truck's changing location. And their discussion of the shooting related to the car chase and ongoing emergency.

Fourth, the call was not "formal." *Id.* "[A]nswers were provided over the phone," during a car chase late at night, and the declarant was not "responding calmly." *Id.* The admission of the 911 recording did not violate the Confrontation Clause and the district court did not err.[14]

## III. **CONCLUSION**

We affirm Mr. Draine's convictions.

---

[14] Mr. Draine faults the district court for analyzing the testimonial nature of the statements "absent testimony from the caller herself or the dispatcher." Aplt. Br. at 39-40. This argument is unconvincing. "In any Confrontation Clause case, the individual who provided the out-of-court statement is not available as an in-court witness." *Ohio v. Clark*, 576 U.S. 237, 250 (2015). And testimony from the dispatcher was not necessary to address the primary purpose of the statements in the call because the "relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had." *Bryant*, 562 U.S. at 360.