FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 8, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

AKEEM OLAJUWAN KEARSE,

    Defendant - Appellant.

No. 23-1071
(D.C. No. 1:15-CR-00153-RM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **McHUGH**, and **EID**, Circuit Judges.
_____

At issue in this appeal is whether the district court plainly erred when it revoked

Appellant Akeem Olajuwan Kearse's supervised release and sentenced him to 24 months

of imprisonment, consecutive to his concurrent twenty-eight-year and sixteen-year terms

of imprisonment with the Colorado Department of Corrections. On appeal, Mr. Kearse

asserts the district court improperly considered a retributive factor, "the need for the

sentence . . . to reflect the seriousness of the offense, to promote respect for the law, and

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It may
be cited, however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

to provide just punishment for the offense," when it sentenced him for violating the conditions of his supervised release. 18 U.S.C. § 3553(a)(2)(A). Mr. Kearse argues this error meets the plain error review standard and thus asserts we should remand this case to the district court for resentencing. We hold Mr. Kearse has not established the district court relied on the retributive factor when it sentenced him, and he therefore has not established the first prong of plain error review. We affirm the sentence imposed by the district court.

## I.        BACKGROUND

### A.        *Legal Background*

The statute governing revocation of supervised release lists sentencing factors from 18 U.S.C. § 3553(a) that courts must consider. 18 U.S.C. § 3583(e). Important for our purposes, the list does not include § 3553(a)(2)(A), which concerns "the need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." This is the sentencing factor representing retribution. *United States v. Booker*, 63 F.4th 1254, 1258 (10th Cir. 2023). Based on the omission of this factor from § 3583(e), we have held that district courts may not consider the need for retribution when revoking supervised release and imposing a new sentence for the violation of the conditions of that supervised release. *Id.* at 1258–61.

While district courts may not consider the retribution factor in this context, the United States Sentencing Commission Guidelines provide that they should "consider[] a violation resulting from a defendant's failure to follow the court-imposed conditions of probation or supervised release as a 'breach of trust.'" United States Sentencing

Commission, *Guidelines Manual*, Ch. 7, Pt.A(3)(b), intro. comment (Nov. 2021). Thus, "the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see also United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) ("The violation of a condition of supervised release is a breach of trust and, while the sentencing court at revocation takes into account the seriousness of the underlying crime, it is primarily the breach of trust that is sanctioned."). In addition, § 3583(e) directs district courts to consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need for the sentence imposed to "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C).

### B.      *Factual and Procedural History*

In 2015, Mr. Kearse pleaded guilty to being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). He was sentenced to 42 months' imprisonment and a three-year term of supervised release. After he was released from prison, Mr. Kearse failed to comply with the terms of his supervised release, so the court revoked his initial term of supervised release and sentenced him to another 9 months in federal prison, to be followed by an additional 27-month term of supervised release.

Shortly after he finished serving the prison portion of his revocation sentence, Mr. Kearse was arrested by Colorado state authorities. He pleaded guilty to second

degree murder and felony assault. Mr. Kearse was sentenced to concurrent prison terms of twenty-eight years and sixteen years with the possibility of early parole.

These guilty pleas, along with a single instance of methylenedioxymethamphetamine, or MDMA, use, formed the basis of Mr. Kearse's second revocation proceeding, which is the subject of this appeal. Mr. Kearse admitted to the violations. Before the supervised release revocation hearing, the probation office submitted a Supervised Release Violation Report. Per that report, due to the supervised release violations, Mr. Kearse's Guidelines range was 33 to 41 months, but his sentence was statutorily capped at 24 months based on the class of the underlying § 922(g)(1) offense. The probation office recommended that the court impose a 24-month consecutive sentence.[1] Mr. Kearse submitted a sentencing statement, including a report by a licensed social worker, to request that his sentence for violation of the conditions of supervised release run concurrently with his Colorado sentences for second degree murder and felony assault. Among other things, the social worker's report detailed Mr. Kearse's history, his needs upon reentry, and how a consecutive federal sentence would impede his access to important resources.

At the supervised release revocation hearing, the Government requested a consecutive sentence. Mr. Kearse again requested a concurrent sentence, arguing that adding a two-year sentence to Mr. Kearse's existing twenty-eight-year sentence would

---

[1] As the probation office's report noted, the Guidelines also provide for the imposition of a consecutive sentence. *See* United States Sentencing Commission, *Guidelines Manual*, § 7B1.3(f).

not protect the public. In particular, Mr. Kearse argued sentencing him to a consecutive two-year term would deprive him of access to the transition resources generally provided to Colorado prisoners near the end of their sentences because Mr. Kearse's subsequent two-year period of imprisonment with the Federal Bureau of Prisons would render him ineligible for a number of those resources. Mr. Kearse also noted his mental health struggles, drug abuse problems, and the resources available to him, again emphasizing that a concurrent sentence would provide him with access to more resources.

The district court recognized Mr. Kearse's argument that a consecutive sentence could adversely affect his access to resources and his transition to the community, but noted that "[b]oth paths have some degree of potential transition" and that the court had already "tried, twice," to sentence Mr. Kearse in a manner that provided him with the resources he needs. Supp. ROA at 42, 44. The court then asked, "why is the focus just on, *Well, he needs this; he needs that; he needs the other thing*?" and stated, "[s]omebody needs to make a statement, as absurd as it sounds, *You don't kill people when you are on supervised release*." *Id.* at 50–51. The court explained it could not and was not trying to sentence Mr. Kearse for the underlying offense, "[b]ut to some degree, it shapes the degree of violation, which shapes the degree of breach of trust, which shapes the degree to which a response is necessary." *Id.* at 51–52. The district court explained it was "mindful of the fact that [the court was] required to impose a sentence sufficient but [not] greater than necessary to achieve the purposes of sentencing as described in [§] 3553, to the extent that those [§] 3553 factors apply to supervised release violation hearings, and

5

they do not always do." *Id.* at 60. The court then imposed a consecutive sentence of 24 months. Mr. Kearse timely appealed.

## II.     DISCUSSION

On appeal, Mr. Kearse asserts the district court improperly considered retribution when it revoked his supervised release term and sentenced him. He argues his sentence was therefore procedurally unreasonable. Contrary to Mr. Kearse's position, the district court did not invoke retribution in sentencing Mr. Kearse. Thus, Mr. Kearse has failed to establish the district court erred and to carry his burden on plain error review.

### A.     *Standard of Review*

The parties agree that, because Mr. Kearse did not raise this argument before the district court, we review for plain error. *See* Fed. R. Crim. P. 52(b). Plain error review requires Mr. Kearse to establish "(1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the [d]efendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Booker*, 63 F.4th at 1258 (quotation marks omitted) (alteration in original). This is a rigorous standard. *United States v. Draine*, 26 F.4th 1178, 1188 (10th Cir. 2022).

### B.     *Analysis*

Mr. Kearse must first show that the district court committed error. *United States v. Sabillion-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014). To fulfill this obligation, Mr. Kearse alleges the district court considered retribution when it revoked his supervised release and sentenced him. He asserts "[t]he district court gave a single

justification for its consecutive sentence: 'to make a statement' about what the 'degree of violation deserves.'" Appellant's Br. at 8 (quoting Supp. ROA at 51, 61). Although the court did not cite to any particular provision of § 3553(a), Mr. Kearse argues that this language makes clear the court was in fact sentencing Mr. Kearse for retributive purposes pursuant to § 3553(a)(2)(A). He asserts the district court's consideration of retribution in sentencing him ran contrary to our decision in *Booker*.

Following a review of the language upon which Mr. Kearse relies, and the record more broadly, we hold Mr. Kearse has not demonstrated that the district court sentenced him for retributive reasons. He has therefore failed to show the district court erred.

**1.    "Make a Statement"**

Mr. Kearse first relies on the district court's intention to "make a statement." The portion of the hearing transcript from which Mr. Kearse quotes provides:

> It's, you are on supervised release, not the first time, but the second time, and you are on supervised release because of a gun and the potential for violence that could come from your possession of a gun, and guess what, we have got a couple of people shot at, and somebody else dead, within a month.
>
> What are we talking about here? What are we doing? Why is the focus on just -- I don't mean that it shouldn't be on Mr. Kearse, but why is the focus just on, *Well, he needs this; he needs that; he needs the other thing*? Somebody needs to *make a statement about*, as absurd as it sounds, *You don't kill people when you are on supervised release*. That's the problem that I'm having here is . . . well, I don't want to rant. May be too late.

Supp. ROA at 50–51 (second emphasis added). Shortly thereafter, Mr. Kearse's counsel noted "[t]he only way I can look at it, you are going -- is it sufficient, for what you are saying, for killing someone on supervised release, two years, two years BOP." *Id.* at 51.

The district court corrected defense counsel's apparent implication that the court intended to punish Mr. Kearse for the murder as opposed for his violation of the conditions of supervised release. *Id.* The district court then explained,

> Yes. I can't sentence him for the underlying offense, and I am not trying to. But to some degree, it shapes the degree of violation, which shapes the degree of breach of trust, which shapes the degree to which a response is necessary.
>
> So yeah, when I change the bow and the ribbon and the hat on it, from the improper to the proper, I'm still dealing with the same circumstance, which is, there is probably the most extreme form of violation of trust that there can be in this case.

*Id.* at 51–52.

The transcript from the hearing reflects that the district court was evaluating the extent to which Mr. Kearse breached the court's trust, an appropriate consideration. Contrary to Mr. Kearse's argument, the district court expressly stated it was *not* sentencing or punishing Mr. Kearse for the underlying manslaughter violation. In fact, the court clarified that it did not want further details about the underlying violation.[2] For example, the court noted it was "not trying to understand or get some recitations as to what happened in connection with the murder," *id.* at 45, and explained it "d[id not] think

---

[2] This differentiates the district court's conduct in Mr. Kearse's case from the district court reviewed by the Fifth Circuit in *United States v. Rivera*, 784 F.3d 1012 (5th Cir. 2015), a case upon which both Mr. Kearse and the Government rely. In *Rivera*, "the district court stressed the seriousness and brutality of the murder and the insufficiency of the punishment that Rivera had received for it." 784 F.3d at 1015. The Fifth Circuit noted "the seriousness of Rivera's murder and the need to provide a just punishment were dominant factors in the district court's sentencing decision." *Id.* at 1017. The district court in Mr. Kearse's case did no such thing.

that factual basis require[d] [the court] to elicit from Mr. Kearse details of, quote/unquote, what really happened, because ultimately, proof of the conviction of the violation of law is the conviction for the violation of law," *id.* at 20. Rather than focusing on the murder as a standalone crime, the court highlighted that these circumstances constitute "probably the most extreme form of violation of trust that there can be in this case." *Id.* at 52. The district court did not err in considering this information for purposes of determining "the extent to which Mr. [Kearse] breached the trust of the district court." *See Booker*, 63 F.4th at 1261.

In addition, Mr. Kearse argues the court's use of "make a statement" cannot be read to invoke appropriate considerations because the court did not discuss deterrence or the protection of the public. To the contrary, the transcript reflects that the court considered how to best deter Mr. Kearse from future violations and protect the public, both of which are valid considerations under § 3583(e). 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C). The district court noted it had previously attempted to work with Mr. Kearse but this was the second time Mr. Kearse had violated the conditions of his supervised release. As we explained in *Booker*, the number of violations is one of the "permissible bases for revocation of the initial supervised release and resentencing." 63 F.4th at 1261. The court also mentioned during the hearing that it had "tried, twice," to sentence Mr. Kearse in a manner that would provide him with the resources he needed to manage his mental health and drug abuse problems. Supp. ROA at 44. As the court explained,

> [The court was] looking at what [it was] seeing here and saying, *that's a problem for Mr. Kearse*. It is. Mental health is a problem for Mr. Kearse. It is. And twice now [the court has] looked at those things and adjusted the

9

sentence to better fit those things than [the court] believe[d] the guideline did.

*Id.* at 45.

This language reflects that the district court, in addition to evaluating the breach of the court's trust, was considering how to protect the public and adequately deter Mr. Kearse from violating the law. These were all proper considerations. The use of the phrase "make a statement" does not, in context, demonstrate the district court erroneously sentenced Mr. Kearse for retributive purposes.

**2.    "Degree of Violation Deserves"**

In addition, Mr. Kearse relies on the district court's discussion of what the "degree of violation deserves" while announcing his sentence. He asserts this reflects the invocation of a retributive "just deserts" theory and the court's intention for the sentence to reflect the seriousness of the violation. Reply at 7.

The hearing transcript reflects that the court used the phrase "degree of violation deserves" in the following context:

> What I am going to say is that at the end of the day, this is a supervised release for a gun violation, the second time, it's occurred, and it is as severe a form of supervised release violation as there can be.
>
> As I said, this Grade A language that gets used is too sterile. Somebody is dead, and they are dead within a month of your being released on supervised release. I'm not sentencing you for that crime that has been done, but it adds a description to what has occurred here, and that degree of violation deserves nothing less than 24 months, and I have listened to everything that's been said, it also deserves consecutive and that's what I'm going to do.

Supp. ROA at 61. The district court made these statements near the end of the hearing while announcing Mr. Kearse's sentence. Mr. Kearse focuses on two components of the statement: the use of "deserves" and the phrase "degree of violation."

Regarding the former, the court's use of "deserves" does not reflect the invocation of retribution. In making this argument, Mr. Kearse relies heavily on the district court's use of "deserves" two times at the very end of the hearing. He asserts the court intended to invoke the concept of "just deserts," arguing "just deserts" is synonymous with retribution in the sentencing context. But we have in the past acknowledged language that could be considered retributive in nature in some circumstances may not necessarily be retributive in other contexts. For example, in *United States v. Kratz*, the defendant asserted the district court invoked retribution when it "chastised him for disregarding his conditions of supervised release by stating he was 'to be given a timeout so to speak.'" No. 22-5089, 2023 WL 3035195, at *8 (10th Cir. Apr. 21, 2023) (unpublished). We determined that this statement did not concern retribution, explaining "[t]he court had just finished discussing the prior petitions for revocation and the need for a different approach," and, "[a]t that point, the court could properly consider the ineffectiveness of prior conditions." *Id.*

In this case, the district court repeatedly disavowed any intention to sentence Mr. Kearse for the violation itself, i.e., the murder. Additionally, like in *Kratz*, the district court here discussed its previous attempts to sentence Mr. Kearse and Mr. Kearse's struggles with his mental health and drug abuse, thus invoking appropriate considerations for revocation and sentencing purposes. The court's use of "deserves" does not invoke a

11

"just deserts" theory of retribution related to the murder, and the court's discussion of prior, failed attempts to deter Mr. Kearse and protect the public undercuts Mr. Kearse's argument that the court sentenced him for retributive reasons.

Next, regarding the "degree of violation" language, Mr. Kearse has not carried his burden because he has not established the presence of retributive intent. As the Government points out, the district court's reference to the "degree of violation" at the end of the hearing was not the court's first discussion of this concept. Earlier in the hearing, the district court explained the underlying offense "shapes the degree of violation, which shapes the degree of breach of trust, which shapes the degree to which a response is necessary." Supp. ROA at 51. Thus, although Mr. Kearse is correct that it would be error for the district court to sentence him for the crimes underlying the violation of his supervised release, Mr. Kearse does not accurately characterize the district court's use of "degree of violation." The district court used this terminology in discussing the degree of the breach of trust and expressly stated that it was *not* punishing Mr. Kearse for the violation itself.

"[A]bsent some indication in the record suggesting otherwise, . . . trial judges are presumed to know the law and apply it in making their decisions." *United States v. Lymon*, 905 F.3d 1149, 1155 (10th Cir. 2018) (quotation marks omitted). Neither the language upon which Mr. Kearse relies nor anything else in the record indicates the district court erroneously relied upon retribution in sentencing Mr. Kearse. The court took steps to clarify that it was not interested in discerning the detailed facts of the underlying violation and expressly disavowed any intention to sentence him for the murder. Instead,

the court emphasized that the violation constituted a serious breach of the court's trust and invoked the concepts of deterrence and the protection of the public, all appropriate considerations for purposes of a supervised release revocation and sentencing.

"To satisfy the plain error standard, a defendant must [first] show that . . . the district court erred . . . ." *Sabillion-Umana*, 772 F.3d at 1333. As has been noted, this standard is rigorous and demanding. *Draine*, 26 F.4th at 1188. For the foregoing reasons, Mr. Kearse has failed to carry his burden and to establish the first prong of plain error review by demonstrating the district court erroneously considered retribution in sentencing him. Because he has failed to establish this first prong, we need not consider the remaining requirements of plain error review.

## III.    CONCLUSION

Mr. Kearse has failed to establish the district court relied upon the retributive factor when it revoked his supervised release and sentenced him. He has therefore failed to demonstrate that the court erred. We AFFIRM the sentence imposed by the district court.

Entered for the Court

Carolyn B. McHugh
Circuit Judge